# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1889.

## The State, *ex rel.* Attorney-General *v.* Savage.

*Impeachment Proceedings against Probate Judge.*

1. *Report of grand jury, as basis of information* —When an information is filed in this court by the Attorney-General, for the impeachment of a probate judge, founded on the report of a grand jury to the Circuit Court (Code, §§ 4839-40), if the information refers to the report as the authority for its filing, and states that a certified copy thereof was transmitted to the relator, it is not necessary to set out specifically the contents of the report.

2. *Same.*—If the report of the grand jury states that the defendant, a probate judge, "ought to be impeached and removed from such office, for and on account of his habitual drunkenness while in such office, prior and down to the making of this report," this is a substantial compliance with the statutory requirement, that they shall make report "setting forth the facts."

3. *Same.*—That the report of the grand jury was not based upon the testimony of witnesses examined before that body, nor upon legal documentary evidence, and that twelve of the grand jurors did not concur in it, if available in defense of the impeachment proceeding, can not be raised in this court for the first time by motion to quash the information.

4. *"Habitual drunkenness," as ground of impeachment and removal from office.*—The charge of "habitual drunkenness," as a ground for the impeachment and removal of a probate judge, under constitutional and statutory provisions (Const. Ala , Art. VII, § 1; Code, § 4818), is established by evidence showing that, for a period of more than three years, he has drunk to excess six or eight times a year, at intervals of one or two months, his "sprees," or fits of intoxication, each lasting one or two days, and one continuing for more than two weeks. (MCCLELLAN, J., dissenting, on the ground that the evidence showed only "occasional drunkenness.")

THIS was a proceeding for the impeachment of Robert R. Savage, judge of probate of Cherokee county, commenced

by information filed in this court on the 6th September, 1889, which is here set out in full:

"To the Honorable, the Supreme Court of Alabama: William L. Martin, Attorney-General of the State of Alabama, who, for and in the name of the said State in this behalf, prosecutes in his own proper person, comes into the said Hon. Supreme Court at Montgomery, on the 6th day of September, 1889; and for the said State, and upon the report of a grand jury of the county of Cherokee in said State, duly elected, impanelled and sworn, at a regular term of the Circuit Court of said county of Cherokee, begun and held in all respects according to law, on the second Monday in July, 1889, which said report was duly made and presented to said court, and was entered on the minutes of said court, a certified copy of which report was, by the clerk of said court, duly transmitted to the said Attorney-General,—gives the court to understand and be informed that R. R. Savage, judge of probate in and for the county of Cherokee, in the State of Alabama, unmindful of the duties of his said office, while in such office, prior to and down to the time of making said report of said grand jury, has become an habitual drunkard, in this: *Specification 1.* That said R. R. Savage has, since the commencement of his term of office as such judge of probate, been addicted to the use of ardent spirits, and has become an habitual drunkard. *Specification 2.* That the said R. R. Savage has, since the commencement of his term of office as such judge of probate, and prior to the making of said report, been addicted to the use of intoxicating liquors, and has become an habitual drunkard. *Specification 3.* That the said R. R. Savage, since the commencement of his term of office as such judge of probate, and prior to the making of said report of said grand jury, has frequently indulged in the excessive use of intoxicating liquors, and from such frequent and excessive use and indulgence thereof has become, and at the date of said report had become, an habitual drunkard. *Specification 4.* That said R. R. Savage, after the commencement of his term of office as such judge of probate, and before the making of said report of said grand jury, was guilty of habitual drunkenness. Wherefore, the Attorney-General aforesaid, for and in the name of the State of Alabama, prays the consideration of the court of the premises above set out; that due process of law be awarded against the said R. R. Savage, judge of probate as aforesaid, in this behalf; that an

order may be made requiring him to appear at a place, and on a day specified in said order, to answer this information; and that the court, upon the hearing hereof, shall render its judgment herein, impeaching the said R. R. Savage as judge of probate as aforesaid, and removing him from said office of judge of probate of said county of Cherokee, or such other judgment as may seem to the court meet and proper."

On the filing of this information, and on the same day, an order was made and entered on the minutes of the court, signed by STONE, C. J., directing a summons to be issued to said R. R. Savage, inclosing a copy of the information, and commanding him to appear and answer, before the Supreme Court at Montgomery, on Thursday, October 10th, 1889.

On the day appointed the defendant appeared by counsel, and moved to quash the information, and to strike it from the files, on the following grounds: (1.) Because the report of the grand jury, on which the information was based, "was made by said grand jury without the evidence of witnesses given before them, and without legal documentary evidence introduced before them." (2.) Because "the grand jury did not examine any witnesses before them upon said charge made in said report, and had before them no documentary evidence thereon." (3.) The report of said grand jury "is insufficient to authorize the filing of such information, in this: that the same was found by said grand jury without any investigation and inquiry as required by law, and without examining any witnesses upon the charge therein set-forth." (4.) The alleged report of the grand jury "was not made to the Circuit Court of said county." (5.) "It is not shown by said alleged report, upon which said information is based, that any report was ever made by a grand jury of said county to the Circuit Court thereof." (6.) Said alleged report "was not concurred in by twelve of the jurors composing said grand jury." (7.) "Twelve of the jurors composing said grand jury did not concur in so much of said alleged report as reports that defendant ought to be impeached and removed from office on account of habitual drunkenness." (8.) "Said report was not concurred in, or agreed to by said grand jury, and is not the report of a grand jury." (9.) Said report "is insufficient to authorize the filing of said information, in this: that it does not set forth any fact or facts upon which the conclusion of said grand jury is based." (10.) Said report "is insufficient to authorize the filing of said information, in

this: that it does not set forth the facts, or any fact, show-ing that this defendant has been guilty of habitual drunken-ness while in said office, and charges only a conclusion." (11.) Said report was not concurred in, nor agreed to by said grand jury, and "is not the report of the grand jury."

A demurrer was filed on the part of the State to these several objections, except the 4th, 5th, 9th and 10th; and the demurrer and motion were submitted together for de-cision.

W. L. MARTIN, Attorney-General, for the State.

TOMPKINS & TROY, and WALDEN & SON, for defendant.

CLOPTON, J.—This case, which is an impeachment pro-ceeding against R. R. Savage, judge of probate of Cherokee county, instituted in this court, is submitted on a motion to quash the information on the fourth, fifth, ninth and tenth grounds, and on a demurrer to the other grounds.

In respect to the impeachment of public officers, a juris-diction not theretofore existing is created by the Constitution and statutes, and the mode of its exercise provided, to which the proceeding must substantially conform. Section 4840 of Code 1886 provides: "It shall be the duty of the Attor-ney-General to institute proceedings under this chapter, and prosecute the same against any officer included in section two, article seven of the Constitution [which includes judges of probate], when the Supreme Court shall so order, or when the Governor shall, in writing, direct the same, or when it appears from the report of any grand jury that any such officer ought to be removed from office, for any cause men-tioned in the first section of this chapter." The causes mentioned are: "Willful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude, while in office, or committed un-der color thereof, or connected therewith."—§ 4818. Whether such proceedings shall be instituted is not rested on the dis-cretion of the Attorney-General; authorization in one of the statutory modes is essential to uphold the proceeding. The present information purports to be founded on the report of a grand jury.

The fourth and fifth objections are substantially the same, though varied in form; namely, it does not appear that the alleged report was made by a grand jury of Cherokee county

[The State, ex rel. Attorney-General v. Savage.]

to the Circuit Court for that county. The information re-
cites that the proceeding is instituted on the report of a
duly organized grand jury of Cherokee county; that it was
made to the Circuit Court at the July term, 1889, and en-
tered on the minutes of the court, and that a certified copy,
which accompanies the information, was transmitted to the
Attorney-General. When the information refers to the re-
port of a grand jury, and is accompanied by it, as the
authorization, this is *prima facie* sufficient to uphold the
proceeding, without the contents being specifically set forth
in the information itself.

The ninth and tenth grounds of the motion are, that the
facts constituting the misconduct with which the defendant
is charged are not set forth in the report of the grand jury, as
required by the statute. Section 4839 of the Code declares:
"It shall be the duty of every grand jury to investigate and
make diligent inquiry concerning any alleged misconduct or
incompetency of any public officer in the county, which may
be brought to their notice; and if, on such investigation and
inquiry, they find that such officer, for any cause mentioned
in this chapter, ought to be removed from office, they shall
so report to the court, setting forth the facts, which shall be
entered on the minutes." It was held in *State v. Sewell*,
64 Ala. 235, that setting forth the facts in the report is
essential to the authority of the prosecuting officer to institute
such proceeeding; and though the facts need not be set forth
with the accuracy usually required in pleading, unless the
report contains a succinct statement, showing the nature and
description of the acts of the official misconduct charged, it
is insufficient to uphold the proceedings. In that case, the
defendant was charged with extortion and corruption in
office, which are conclusions of law from facts which may
differ in different cases. The report of the grand jury, on
which the present information is based, is as follows: "In
the discharge of our duties as a grand jury, we find, and do
hereby report, that R. R. Savage, judge of probate in and
for the county of Cherokee, ought to be impeached and re-
moved from such office, for and on account of his habitual
drunkenness while in such office, prior to and down to the
time of making this report." No greater fullness of descrip-
tion of the acts, and less accuracy of statement, is required
in such report, than in an indictment. In an indictment, it
is sufficient to use the words of the statute creating the
offense, when by doing so the fact or facts constituting it are

directly and expressly alleged. For instance, an indictment for selling intoxicating liquor to a man of known intemperate habits is sufficient, if it describes the offense in the language of the statute; and a witness, having opportunities and acquaintance, showing knowledge of· a particular person, may state that he is a man of intemperate habits.—*Smith v. State*, 55 Ala. 1. When being a common drunkard is declared an offense, an indictment sufficiently charges it by the use of the term itself.—*Com. v. Whitney,* 5 Gray, 87. Habitual drunkenness is the effect of frequent repetition of the excessive use of intoxicating liquors. It is a fact, of which the term itself is descriptive. Specific instances of drunkenness, or the frequency of its repetition, or the effect upon the physical or mental state of the person, need not be alleged. When the official misconduct charged is a fact in itself, and not a conclusion of law from facts, the report conforms to the statutory requirement, if it describes the offense in the words of the statute, by which such act is declared a cause of impeachment and removal from office.—*Trigg v. State*, 49 Texas, 645.

The other grounds of the motion, to which a demurrer was interposed, are, that the report was not concurred in by twelve of the grand jurors, and was not based upon the evidence of witnesses examined before the grand jury, or upon legal documentary evidence. By our statute, as well as at common law, the concurrence of twelve grand jurors is requisite to find an indictment.—Code, § 4353. And by section 4350, the grand jury, in the investigation of a charge for an indictable offense, is forbidden to receive any other evidence than is given by witnesses before them, or legal documentary evidence. Under these statutes, it was ruled in *Sparrenberger v. State*, 53 Ala. 481, that when it appears that a paper, purporting to be an indictment, was not returned into court with the concurrence of twelve of the grand jurors, or was found without the evidence of witnesses or legal documentary evidence, it should be quashed and stricken from the file. It is insisted that these rules and statutory provisions are applicable to the·report of a grand jury, upon which proceedings are to be instituted under section 4850. In respect to impeachment proceedings, the report of the grand jury is an informal accusation, and is in the nature of a presentment, or instructions, upon which to base and frame an information. Whether it is necessary that twelve of the grand jury should concur in such report,

[The State, ex rel. Attorney-General v. Savage.]

or that it should be made upon other evidence than personal knowledge, it is unnecessary to decide.

In *Sparrenberger v. State, supra,* it was held, that inasmuch as such objections do not go in abatement, but to the legal existence of the indictment, the motion to quash and strike from the files must be addressed to the court, upon whose records, or into whose files, the paper has been introduced without warrant of law, before pleading to the indictment. Such motion is an invocation of the inherent power of the court over its own records, to make them speak the truth. That court is clothed with exclusive jurisdiction and power to expunge it from the records. When the proceeding is not void, no other court has authority to declare that the record speaks a falsehood. Its verity can not be collaterally assailed. This court is without authority to quash an indictment, or strike a paper from the files of the Circuit Court, however illegally introduced, unless in the exercise of its appellate or supervisory jurisdiction. So long as it remains a part of the record, we must, except on appeal or writ of error, receive and regard it as absolutely true. It admits of grave doubt, whether the rule as to quashing an indictment on the statutory objections, that twelve of the grand jurors did not concur therein, or that it was found without legal evidence, should be extended to the report of a grand jury, the basis of an impeachment proceeding. The statute requires that the report shall be entered on the minutes of the court. Judicial action is not necessary. No notice to the officer charged is required, or provided. It is questionable, whether, after the report has been returned and entered on the minutes, the accused will be permitted to go behind it, and show that it was not found by the requisite number of jurors, or without legal evidence. This question we do not decide. Be this as it may, the information being an original proceeding in this court, we hold, that such objections can not be taken advantage of, for the first time, in this court by motion to quash the information. *Jackson v. State,* 74 Ala. 26.

The motion is overruled as to fourth, fifth, ninth and tenth grounds, and the demurrer to the other grounds is sustained.

---

On the 16th December, 1889, after the delivery of the foregoing opinion, an order was entered of record by consent, appointing A. D. Sayre as commissioner to take the

"depositions of such witnesses as may be brought before him, substantially in the language of the witnesses," and commanding him to return and certify the same, under seal, to the court, by the 22d January, 1890; and on that day, the depositions being opened and read, and the defendant having pleaded not guilty, the cause was argued and submitted, and held under advisement until February 1st, 1890, when the following opinions were delivered:

STONE, C. J.—Article VII, section 1 of the Constitution—§ 4818 of the Code of 1886—must be interpreted in the light of the object the law-making power had in view in their adoption and enactment. They pertain to official qualification and fitness, and require that the incumbents of the enumerated offices shall be free from the vices therein interdicted. In reference to habitual drunkenness—the *gravamen* of the present information—the purpose was to secure a calm, wise and faithful administration of the law, uninfluenced by the endangering effects of habitual intoxication. It is implied and assumed that drunkenness so clouds the intellect and inflames the passions, as that official trust can not be safely confided to those with whom excessive indulgence in intoxicating drinks has become a habit.

*Drunkenness* is that effect produced on the mind, passions, or body, by intoxicants taken into the system, which so far changes the normal condition, as to materially disturb and impair the capacity for healthy, rational action or conduct; which causes abnormal results, or such as would not ensue, in the absence of the intoxicants—the changed effect produced by the immoderate, or excessive use of intoxicants, as contrasted with normal *status* and conduct.

*Habit* is customary state, or disposition, acquired by frequent repetition; aptitude by doing frequently the same thing; usage; established manner. When a person has repeatedly acted in a particular way, at intervals, whether regular or irregular, for such length of time as that we can predicate with reasonable assurance that he will continue so to act, we may affirm that this is his habit.

The testimony, taken in its entirety, proves that the accused drank to excess—to drunkenness—six or eight times a year, and that this, with intervals of from one to two months, has, with the exception of about a year immediately succeeding his last election in 1886, been kept up for much more than three years before these proceedings were insti-

[The State, ex rel. Attorney-General v. Savage.]

tuted; that his sprees, or fits of intoxication, lasted from one to two or more days, and once for two or more weeks; and that during his spells, or *sprees*, he frequently staggered in walking, sometimes fell to the ground, had to be led or assisted home, and was abnormally loud, if not boisterous in his conversation. Even after the present proceedings were set on foot, he took one or more *sprees*. Under the definitions given above, we hold that drunkenness had become a habit with the respondent, and that at and before the commencement of this proceeding he was and is guilty of habitual drunkenness. We, therefore, find the charge and specification of habitual drunkenness, made against respondent, to be true, and that he is guilty as charged in the information.—*Blaney v. Blaney*, 26 Mass. 205.

It is therefore the order and judgment of the court, that the said R. R. Savage, judge of probate of Cherokee county, be, and he is hereby, removed from the said office of judge of probate, and that he is disqualified from holding office under the authority of this State, for the term for which he was elected.

SOMERVILLE, J.—The information addressed by the grand jury of Cherokee county to this court, and filed by the Attorney-General, which is analogous to the ordinary articles of impeachment, charges the defendant, R. R. Savage, as probate judge of said county, with habitual drunkenness as a ground of impeachment, which is one of the several causes, specified in the Constitution and statute, which may be made the basis of such a proceeding.

Certain State officers, including judges of probate, are subject to impeachment and removal from office, on the following grounds: willful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude while in office, or committed under color thereof, or connected therewith.—Const. of Ala., 1875, Art. VII, §§ 1–4; Code, 1886, §§ 4818–4819.

It is not practicable, nor, so far as I know, has any court attempted to lay down, any fixed rule accurately defining what is habitual drunkenness, or who may be deemed an habitual drunkard.

The two phrases "habitual drunkard," and "common drunkard," have been held in some States to be synonymous in meaning, in construing statutes regulating the liquor

traffic, relating to the subject of granting divorces, and providing for the custody of the estates of persons of this class. Either of the expressions may, in general terms, be defined as meaning one who drinks intoxicating liquors to excess with habitual frequency. Indulgence by a person, on the one hand, in occasional acts of drunkenness, would not be sufficient to bring him within the sphere of this definition. Nor, on the other hand, need he be constantly drunk every day or week in a year. Nor would I be willing to say that the term necessarily involves the idea of the victim of the habit yielding to the temptation of drink whenever the opportunity is afforded, as has sometimes been intimated. Common observation shows that there are persons who are in the habit of getting drunk almost regularly every week, while they indulge in drink at no other time. There are others whose formed habit it is to fall into drunken debauches, lasting for days, and even weeks, and repeated from one year to another with a periodicity more or less regular according to the peculiar temperament of the man. This form of alcoholism often becomes a disease, formerly characterized as a species of dipsomania, and more recently known in scientific nomenclature as *methomania*—an irresistible craving for alcoholic or other intoxicating liquors, accompanied by peculiar symptoms described by medical authors, the discussion of which, however, is foreign to the scope of this opinion. The victim acquires the *habit* of being attacked by these drunken *sprees*, or fits of intoxication. I can see no good reason why such a man would not properly come within the definition of an habitual drunkard, or should be exempt from being classed as a man of intemperate habits. In popular parlance, he certainly would be so classed.

The case of *Blaney v. Blaney*, 126 Mass. 205, is an authority on this point. The Massachusetts statute makes "gross and confirmed habits of intoxication" a ground of divorce, without undertaking to define those terms. The evidence showed, using the language of the court in that case, that the defendant, "for a period of twelve or fifteen years, had, as often as three or four times a year, yielded to an impulse to drink to excess; that on such occasions he became grossly intoxicated, continuing in that condition a week or ten days together; that at such times he went or was sent to an asylum for inebriates; that when the desire for drink came upon him, he could not resist, and that a

single glass would bring on excessive drinking, and a renewal of gross intoxication. It was also shown that there had been no apparent improvement in his habits in this respect, and that any undue excitement would make him drink." Upon this state of facts, the Supreme Judicial Court of Massachusetts concurred in sustaining a judgment finding the defendant to have been a person of gross and confirmed habits of intoxication.

In this case, the phrase "habitual drunkenness" must be construed with reference to the particular mischief intended to be remedied by the law-makers. Being one of several causes of impeachment in office, it must be interpreted in connection with the other grounds associated with it, which are also made causes of impeachment and removal from office. They are as above stated: (1) Willful neglect of duty; (2) corruption in office; (3) incompetency; or (4) any offense involving moral turpitude. These are causes which would seem to render the incumbent practically or morally unfit for office. They all tend, more or less, to reflect upon the dignity of office, to generate disrespect for the law, through the want of worth, moral or intellectual, in the officer, to create dissatisfaction among the people with their government, and to thus seriously cripple the administration of justice in all its departments.

Any indulgence in excessive intoxication, with such habitual frequency as to produce this result, ought, in my judgment, to bring a given case within both the letter and spirit of the law.

The summary of the testimony in this case, as made in the opinion of the Chief-Justice, is fully supported by the record. It satisfactorily shows that the respondent has, during his present term of office, been guilty of drunkenness which may properly be characterized as habitual within the meaning of the Constitution and statutes of this State.

On these grounds I concur in the judgment of impeachment rendered by the court.

McCLELLAN, J.—I am unable to concur with the majority of the court in the conclusion reached in this case. We are substantially agreed as to the facts. It is not, I understand, contended by my associates that the evidence shows more than this: that the respondent, for the last two years, and for two or three years prior to the third year back, during which he did not drink at all, has indulged in

[Anderson v. The State.]

the use of intoxicating liquors to excess, as often as from six to eight times a year; that on the occasions of such indulgence he would be more or less drunk for periods of from one to two, and sometimes three days; that these *sprees*, thus irregular in duration, were also irregular and spasmodic in their recurrence, the periods between them being in some instances, perhaps, less than a month, and in others as long as three months; and that they were not traceable to any common cause, so far as the evidence shows, or custom, or the result of any habit, or of any fixed and ever present appetite or desire. The case presented, then, by the aspect of the testimony most unfavorable to the respondent, is simply no more or less than that of a man who gets drunk from six to eight times a year, at irregular intervals, without any connection or relation between the different occasions of excessive indulgence, and without these indulgencies being referable to any fixed mental or physical condition of the man. Without enlarging on the matter, it will suffice to say that, to my mind, this state of facts affords as apt an illustration of *occasional,* as distinguished from *habitual* drunkenness, as could be desired; and I am therefore very clear in my own conviction that the charge of being an habitual drunkard has not been made out.