STATE OF NORTH DAKOTA, Respondent, v. GEORGE H. PURCHASE, Appellant.

(222 N. W. 652.)

Opinion filed December 28, 1928.

*L. H. Connolly,* for appellant.

*George H. Drowley* and *William Langer,* for respondent.

BURR, J. In 1927 the defendant became the duly elected, qualified and acting state's attorney of the county of Sioux in this state. On the 15th day of August, 1927, charges of misconduct in office, malfeasance, and habitual drunkenness were made against the defendant by five qualified electors of the county of Sioux and filed with the governor, but no indemnity bond was filed or approved at that time. The governor of the state thereupon issued an order suspending the defendant from the office of state's attorney, appointing the Hon. C. L. Crum as special commissioner to hear the testimony, and the Hon.

Scott Cameron, a competent attorney, to appear on behalf of the state and prosecute the proceedings. The answer of the defendant to the complaint is in effect a general denial. After the parties appeared before the commissioner at the time and place set for hearing, an adjournment was had and on the hearing being resumed an amended complaint was filed on behalf of the state, signed by four of the relators and one additional person, and verified by the five signers. The defendant claims the commissioner had no power to permit an amended complaint to be filed. To this amended complaint, "oral answer was interposed—denying each and every allegation contained in the complaint, except that defendant admitted that he was the duly elected, qualified and acting state's attorney for Sioux county, North Dakota, and it was further stipulated and agreed by and between the attorneys for the state and the attorney for the defendant that the answer served to the original complaint stands as answer of the defendant to the amended complaint." Testimony was taken and during the trial various objections were made by the defendant as epitomized in the specifications of error and objections set forth hereinafter. The testimony having been reduced to writing the commissioner made his report to the governor without findings or recommendations. This report was filed on the 20th day of October, 1927, and on the 22d day of November, the hearing was had before the governor. At that time the defendant objected to the jurisdiction of the governor to proceed further with the removal proceedings on the following grounds:

1. That at the time the proceedings were commenced no indemnity bond had been filed with or approved by the governor.

2. That the amended complaint had not been signed by five duly qualified electors of the county of Sioux.

3. That the governor had not directed the attorney general of the state to file any complaint and no verified complaint or amended complaint was ever verified by the attorney general.

4. That no order was issued by the governor requiring the commissioner to hear or determine any matters set forth in the amended complaint.

5. That no proof whatever was submitted showing the signers of the amended complaint were electors of the county of Sioux.

6. That one of the signers was not an elector of the county of Sioux.

7. That the governor had not set the date of hearing within ten days after the filing of the commissioner's report. The governor required the necessary indemnity bond to be given and it was furnished, and on the 23d day of November, 1927, the governor issued his order removing the defendant from the office of state's attorney, basing his decision upon the testimony taken and reported to him by the commissioner, and finding the defendant guilty of misconduct, neglect of duties in office, and habitual drunkenness. Thereupon the defendant appealed to the district court of the county of Logan, the appeal being taken upon grounds similar to the objections heretofore set forth and on the additional grounds that the findings of the governor as to misconduct, neglect of duty, and habitual drunkenness were not sustained by the evidence, and that chapter 230 of the Session Laws of 1927 is unconstitutional as violating the 7th and 14th Amendments to the Constitution of the United States and sections seven and thirteen of the Constitution of this state.

The district court of the county of Logan heard this appeal in April, 1928, and affirmed the action of the governor in removing the defendant from the office of state's attorney. Thereupon the defendant appealed to this court, on the grounds, in brief, that no indemnity bond had been filed at the time the proceedings were instituted; that no proof had been submitted showing the signers of the complaint or amended complaint to be electors of the county of Sioux; that no valid or proper amended complaint had been served upon him; that Mr. Scott Cameron had no right or power to verify the amended complaint, not being the attorney general of the state; that one of the signers to the amended complaint was not an elector of the county of Sioux; that no date of hearing had been set by the governor of the state of North Dakota to be held on a day not more than ten days from the date of the filing of the commissioner's report, and that more than ten days elapsed after the filing of the commissioner's report before the date was set by the governor;" that the evidence is not sufficient to show the defendant guilty of misconduct, neglect of duties, or habitual drunkenness, and there was not sufficient evidence introduced to show him guilty of any misdeeds, or habitual drunkenness, that would affect or did affect the performance of his official duties as state's attorney.

A proceeding to remove from office is not a criminal one. State

ex rel. Payne v. District Ct. 53 Mont. 350, 165 Pac. 294. "Such proceeding for removal from office is an administrative function not judicial though it is exercised in a judicial manner." State v. Dahl, 140 Wis. 301, 122 N. W. 748. It is "not intended as a punishment for crime, and while such proceedings in some respects resemble a criminal action they are only quasi criminal, and negative the idea of their being criminal." Archbold v. Huntington, 34 Idaho, 558, 201 Pac. 1041. "Such proceedings are authorized for the good of the public service, not as a punishment of the officer, and are remedial rather than penal in their nature." Re Nash, 147 Minn. 383, 181 N. W. 570.

In the same case of Re Mason, 147 Minn. 383, 181 N. W. 570, the court held that the proceedings for the removal of a state's attorney "for malfeasance in the performance of his official duties are not governed by the strict rules which govern trial in court."

The right to hold office is neither a vested right nor a property right. It is an employment and the public may prescribe rules for removal. After election or appointment the officer has the right to hold the office and enjoy the emoluments unless removed by law. When these rules for removal are enacted they become exclusive, and are construed strictly for the purpose of determining whether the charges laid are contained therein. This is the basis for the apparently contrary authorities such as Atty. Gen. v. Bairley, 209 Mich. 120, 176 N. W. 403. The strict construction is required in order to ascertain whether the charge is included in the statute. When once found to be included in the statute the proceedings which flow therefrom are civil. Hence it is said in the case of Rutter v. Burke, 89 Vt. 14, 93 Atl. 849, proceedings are not governed by the same strictness as appeals and "full compliance with rules governing trial . . . is not required."

There is no merit in the contention that the amended complaint is not signed nor verified by five qualified electors of the county of Sioux.

The statute does not say by whom the complaint must be verified, or by how many. The complaint must be in writing, in order to be filed and a copy of the charges served, but the statute makes no reference to the method of verification. There is no provision requiring the complaint to be signed by any specified person. In this case the proceedings to remove an official are commenced "on the relation of five

qualified electors." The state of North Dakota is the complainant and such proceedings may be initiated on the relation of these electors.

Section 685 of the Supplement says: "The governor may remove from office, etc.," and in § 686 of the Supplement in referring to the complaint or charge says: "It may be made on the relation of any five qualified electors of the county, etc." The same section provides further, that "complaint or charges shall be filed by the attorney general when directed to do so by the governor." Our statute by the use of the word "may" clearly intends that the governor may act on his own motion. He may hear any charges made from whatever source received. He may act on his own volition on merely oral statements, rumors which he credits, or in any other way when he thinks the public service requires it, and in such cases can require the attorney general to prefer charges. He may act when charges are made on the relation of five electors, or by the state's attorney. All this goes merely to the initiation of the proceedings. Whether he acts on his own volition, and requires the attorney general to prefer charges, or whether he acts on the relationship of five electors, or the state's attorney, the formal charges drawn and preferred must set forth some or all of the statutory requirements for removal, due notice must be given and a proper hearing had. There is no removal without proper charges. But the governor may inquire himself into the conduct of an official if his information is such as he deems justifies an inquiry. He thus acts independently of any one else in this respect. All this is implied by the statute for it makes provision for the governor to require the attorney general or state's attorney to act and does not say on what the governor may require such action. To this effect see Atty. Gen. v. Bairley, supra. Hence the complaint is not demurrable even if it be not signed by any of the relators, if commenced on the relation of five electors. The fact therefore that one of the relators did not sign the amended complaint is immaterial. After having been commenced on the relation of five electors it is immaterial what they did, or what they desired. They had no control over the proceedings. In State ex rel. Russell v. Box, 34 Tex. Civ. Rep. 435, 78 S. W. 982, we have a proceeding for the removal of a sheriff. The Texas statute requires such proceedings to be commenced by the district attorney, or some other officer authorized to prosecute suits in the name of the state and

the petition was signed and sworn to by a relator, not the attorney. The court held, however, that "where the petition in a proceeding to remove a sheriff from office was signed only by a relator, but it did not appear on the face thereof by what attorney or attorneys it was conducted, it was not demurrable on the ground that such proceedings could only be conducted by the district attorney or some other officer authorized to prosecute suits in the name of the state." If such petition is not demurrable it must be because of the nature of the relation, being similar to the position of a grand jury and it could only be taken advantage of by direct attack. The charges must be such as make out a prima facie showing as required by § 685 of the Supplement. The relators, as shown by State v. Grubb, 48 N. D. 1212, 189 N. W. 326, are not parties to the action. Their functions are "somewhat similar to those discharged by a grand jury, whereby formally and according to law, by information or indictment, it accuses one of the commission of a crime, which" thereupon "terminates its duties in that respect." After having initiated the proceedings, presented charges to the governor and he has taken action thereon, their duties cease. There was no special attack upon these five qualified electors. It is true the complaint states they are qualified electors and there is a denial; but this denial no more reaches their functions than the denial or plea of not guilty to an information of an indictment reaches the functions of an individual grand juror. There is no contention that the charges as laid before the governor were not sufficient to authorize his action. The defendant objects because the commissioner permitted the complaint to be amended by the insertion of additional charges and urges that this amended complaint was not first submitted to the governor and that the governor did not authorize the change. The motion to amend the complaint was made after the hearing had begun and was occasioned by the rulings in regard to the admission of testimony. The commissioner ruled that certain testimony offered was not admissible under the pleadings and thereupon the state asked leave to amend. Section 687 of the Code says the complaint "may be amended as in ordinary actions" provided "that if such amendment to the complaint or charges include any new or additional charge, then a reasonable time should be allowed the accused to prepare his defense thereto." The commissioner permitted the amendment and gave the defendant

time in which to answer—in fact the time when the hearing should be resumed was agreed upon by the parties themselves and there was no error in this respect.

It seems to be the claim of the defendant that the giving of an indemnity bond is a jurisdictional matter. In other words, before the governor can proceed to act he must insist upon and have filed the bond prescribed by § 693 of the Supplement and unless this be done the proceedings must fail. We do not so consider this matter. The purpose of such bond is to furnish security for the state, not for the defendant. In the absence of a statutory provision allowing costs the defendant could not recover costs even if successful. Whether he would have an action for damages against those who commenced the proceedings is another matter. In the case of Roberts v. Paul, 50 W. Va. 528, 40 S. E. 470, it was held "costs are not recoverable in a proceeding in circuit court to remove an officer under § 7, chap. 7, Code 1899" (the W. Va. statute). Proceedings had been commenced for the removal of the commissioner and judge of the county court and were successful, but the district court refused costs. The relators claimed this was error but the supreme court said: "The statute . . . under which the removal proceedings was had is purely statutory and only what the statute enables the court to do can be done." The court goes on to say that the general provision allowing costs to a prevailing party in civil actions is not applicable in such proceedings as this. Our statute makes no provision for the recovery of costs either on the part of the relators or of the defendant, hence the defendant has no interest in the bond. There is no provision in the law giving him the right to proceed against the bond. It is a statutory provision for the benefit of the state. The defendant cannot complain if it was not furnished until a later time. The bond is given "binding such relators to the payment of such costs upon the failure to maintain such charges as herein provided." Even if the proceedings fail the relators are not necessarily bound to pay the costs. It is only in case it appears to the governor "that such charges were not preferred in good faith" that he may in his discretion tax the costs against the relators in case of failure. The giving of a bond is not jurisdictional and the subsequent furnishing of the bond cured any defect resulting from the failure.

It is claimed the governor lost jurisdiction of the case because the

date of hearing was not fixed within ten days after the filing of the report of the commissioner. Section 690 of the Supplement as amended by chapter 230, Session Laws of 1927, specified that the governor "shall fix a time and place for the hearing upon a date not more than ten days from the date of filing of the commissioner's report and not less than five days from the date of service of notice of such hearing upon the accused." But we do not see how the setting of a date a few days later devests the governor of jurisdiction to hear and determine the charges made upon the testimony that has been presented. The statute nowhere makes further proceedings dependent upon notice of the time being set within ten days. Upon the filing of the charges the governor had suspended the defendant. True, he remained suspended from that time but if he considered the governor dilatory he might have applied for a writ of mandamus to compel him to act: He did not do so but remained content with the situation. The commissioner's report was filed on the 20th of October and under the statute the governor should have set the hearing for the 30th of October or prior thereto, giving at least five days' notice. We do not consider the failure to do this deprived the governor however of jurisdiction to pass upon the testimony. The defendant was present at the hearing, and was represented by counsel. He had opportunity to argue the testimony and the proceedings. No objection to the testimony was made before the governor nor had the objections filed with the governor anywhere specified that the testimony was not sufficient to sustain the charges. The governor did not lose jurisdiction because of the failure to set a date of hearing within ten days after the filing of the commissioner's report.

In his appeal to the district court defendant claimed chapter 230 of the Session Laws of 1927· was unconstitutional; but he makes no such claim before this court nor did he argue the matter so that we deem this objection abandoned.

The appeal from the governor to the district court is "heard by the judge of said court upon the record in said proceeding, without a jury." The court heard the appeal and affirmed the action of the governor. The only additional specifications of error, other than those urged before the governor are that Mr. Scott Cameron had no right to verify the amended complaint and that the evidence does not sustain the

charge. Upon charges being preferred against an official as prescribed in § 686 of the Supplement the governor may appoint any competent attorney to appear as prosecutor and this attorney appears on behalf of the state. He may perform such duties and do such things as any other counsel appearing for the state may do. In this case Mr. Scott Cameron did not verify the amended complaint, therefore we need not discuss whether he could do so or not. The amended complaint was verified by five private individuals; but as we have shown there is nothing in the statute which specifies who shall verify.

The defendant says the charges are not sustained by the evidence. The defendant is charged with wilful neglect of duty, misconduct, and habitual intoxication. There was testimony to the effect that the defendant and another person took a sack of beer with them into a hotel and were joined by several others in a beer party which continued for four hours. When the defendant was asked if he were "not afraid of getting picked up" he responded there was no man who could arrest him as he was the state's attorney of Sioux county. Loud, boisterous language was used by the party the defendant joining therein, and noise like a rough and tumble fight came from the room. When the party broke up the defendant came staggering out talking to himself and using foul language. There was testimony to the effect that at another time the defendant invited people to his room and told them if they would come up he would give them a drink; these parties testified they went up to his room and the state's attorney in his own county treated them to intoxicating liquors, and these same parties testified that the defendant became drunk at that time, and presented bottles of intoxicating liquors to the witnesses. The general charge was that the defendant within his own county became intoxicated while attending a dance and while there gave intoxicating liquor to people attending the dance and in the presence of a great many of the people that were assembled there. There were several witnesses who testified to the truth of this charge.

One witness, testifying on this charge, described the defendant as walking "wabbly," "talking loud," "awfully talkative," "I would say pretty mushy" and his speech was "sloppy." He also "used language that a sober man would not use." He recited some of the vulgar, profane and obscene language which the defendant used while in that

condition. The witness told how the defendant invited him to come with him and have a drink, he saw him treating others but what he gave them he did not know. A woman testified she saw him treating women and one of them described it as "hooch." She testified the defendant was intoxicated, that you could smell liquor off his breath. She testified that some of the women refused to drink because it was too strong for them. Many witnesses testified to the condition of the defendant at this time, and with reference to this charge.

Other witnesses testified of going to consult him professionally at other times and found him drunk in the courthouse. This covered periods all the way from January to July, 1927. Another witness testified that on an entirely different occasion from the one known as the dance, he and four others went with the defendant to the defendant's office, and there they drank "home brew" which some one had produced.

It is a crime for a person to be drunk in a public place; for a person to transport intoxicating liquors and in other ways violate what is known as the prohibition law. It is misconduct on the part of the prosecuting officer to engage in such practices. It brings the law into disrepute, weakens the administration of justice, encourages crime and shows a total disregard not only of the proprieties but of duties.

Habitual or wilful neglect of duty is such neglect which comes from inexcusable carelessness and recklessness in the discharge of an official duty. See Phillips v. State, 75 Okla. 46, 181 Pac. 713. Hence when a state's attorney has such knowledge and information given him which the statute says requires him to act then his failure to act thereon is a wilful and reckless disregard and neglect of official duty. "A wilful neglect of official duty . . . may be either an act of omission or commission." Batson v. State, 216 Ala. 275, 113 So. 300. As stated in Nelson v. State, 182 Ala. 449, 461, 62 So. 189: "An occasion calling for the performance of official duty may be of such great public importance, the duty itself so undeniable and so morally urgent, conditions so insistent, as to justify and require removal from office on proof of a single act or omission; and of course repeated legal sins of commission or omission will furnish evidence of unfitness."

In State ex rel. Atty. Gen. v. Savage, 89 Ala. 1, 7 L.R.A. 426, 7 So. 7, 183, the defendant had been drinking to excess six or eight times

a year, at intervals of from one to two months, for over three years whose fits of intoxication lasted from one to two days and once for two or more weeks. From this he was held to be guilty of habitual drunkenness within the constitutional provisions of Alabama relating to the removal of officers. The court held that the term habitual drunkenness when used as one of the grounds for removal "must be interpreted in connection with the other grounds associated with it," such as wilful neglect of duty and incompetency. It says, "They all tend, more or less, to reflect upon the dignity of the office, to generate disrespect for the law through the want of worth, moral or intellectual in the officer, to create dissatisfaction among the people with their government and thus seriously cripple the administration of justice in all its departments." An official who thus drinks to excess prevents himself from remaining fit to discharge his duties when called upon and by his own act he becomes unfit at times and thus unable to give to the public service which it requires.

Testimony was introduced showing attempts on the part of others to get the defendant to enforce other laws of the land and his neglect and refusal to do so. This was not confined to one incident but to a large number of different kinds. True, some of the acts might be attributed to other motives, nevertheless, the defendant did not deny any of the charges nor himself deny any of the testimony.

There was testimony to the effect that a young girl made complaint to establish the paternity of her child. The defendant commenced the prosecution and the preliminary hearing was set for the 7th of the month but the subpœna for the prosecuting witness called for her attendance on the 8th of the month and because of her nonattendance on the 7th the case was dismissed, and the defendant refused to take up the matter again. The defendant showed an utter disregard for the rights of the complainant and her child. It was not until the attorney general took action that the defendant approved a warrant. He offered no explanation for his conduct nor did he deny the testimony. In fact throughout the whole hearing the defendant never went on the stand to deny any of the statements or testimony of the witnesses. This in itself is significant and the governor had the right to assume that the uncontradicted testimony of such witnesses was true. The governor and the court had the right to assume that he could not deny them,

that therefore all of the testimony given on behalf of the state is true and there is ample testimony given to support the charges. The action of the defendant himself is sufficient to indicate that the testimony is in fact true. This being so the governor was justified in removing the defendant. The district court was correct in affirming the action of the governor. The judgment of the lower court is affirmed.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.