85 So.2d 153

**Pauline MORALES**

**v.**

**STATE.**

**7 Div. 368.**

Court of Appeals of Alabama.

Jan. 31, 1956.

Love & Hines, Talladega, for appellant.

John Patterson, Atty. Gen., and J. Noel Baker, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant's jury trial resulted in a verdict finding her guilty of being a vagrant. Judgment was entered accordingly and the court imposed a sentence of twelve months at hard labor. Hence this appeal.

The State's evidence was directed toward showing that the appellant was a common drunkard, such a person being within one of the numerous categories defining who is a vagrant. See Section 437 (5), Title 14, Code of Alabama 1940.

For the State Mrs. Ruby Canada testified that she lived next door to the appellant. Within the year preceding the original warrant and complaint she had seen the appellant drunk some 12 to 15 times, on which occasions she would be drunk for periods of two to three weeks.

Numerous automobiles would arrive at appellant's home at all hours of the day and night, and men would arrive "by car loads." Some of the men would stay 2 or 3 days at a time and would appear drunk. There would be lots of cursing and obscene language.

Mrs. Holt, who ran a sandwich shop near appellant's home, testified she had seen appellant drunk some 4 or 5 times during the year in question, and that these sprees would continue for weeks.

Mrs. Curtis German, who lived diagonally across the street from appellant, testified she would see the appellant two or three times a week during the twelve month period in question, and that she was drunk more than she was sober; that when appellant was drunk she would remain so two or three weeks or even a month.

There was considerable testimony as to visits to appellant's home by large numbers of men, military personnel, and taxi drivers, and of certain specific instances of conduct by appellant evidencing a drunken condition. We see little need of detailing these instances.

The appellant's evidence was directed toward showing that she had had only one or two drinks during the year preceding the date of the issue of the warrant. Appellant insisted this to be true for the reason that she had taken antibuse during this time.

All of the above only raised a question of fact for the jury.

In determining the meaning of the term "common drunkard," the late Presiding Judge Carr made the following observations in Tatum v. State, 32 Ala.App. 128, 22 So.2d 350, 351:

"The terms 'common drunkard' and 'habitual drunkard' are often used interchangeably and are by many courts considered to be synonymous. Each term is taken to define a characteristic of a person who drinks intoxicating liquors to the extent of getting drunk, and this excessive indulgence occurs

with habitual frequency. Or, in the language of the trial judge in his oral charge to the jury: 'A common drunkard is a person whose general rule of life is that of drunkenness, drinking, continuous drinking, sobriety being the exception. I mean sobriety being an exception to his general rule, his general rule of life being that of drinking.' 28 C.J.S., Drunkards, § 1, p. 540; State ex rel. Attorney General v. Savage, 89 Ala. 1, 7 So. [7] 183 [7 L.R.A. 426]; State ex rel. Attorney General v. Robinson, 111 Ala. 482, 20 So. 30."

Under the above principles we think the State's evidence ample in its tendencies to fully justify the jury's conclusion that this appellant during the period covered by the complaint, was a common drunkard.

The State offered as witnesses two police officers who went to appellant's home on the night of 5 January 1955. There the officers found the appellant and several other persons of both sexes drunk and in various stages of undress. One couple was found in the attic. Some of these people bore the odor of "Solox" on their breath.

Over appellant's objection there was introduced several cans and bottles, some partially empty, of a liquid called "Solox" found by the officers in appellant's home upon the occasion of their visit. Expert evidence was to the effect that "Solox" is a paint thinner, contains methyl alcohol, and is poisonous. Despite this it is used as a beverage by certain persons, though it tends, if taken in quantity, to make the consumer ill.

Counsel argues that such evidence was inadmissible under the provisions of Section 210, Title 29, Code of Alabama 1940. This section provides that no evidence obtained in an illegal search of a private dwelling shall be admissible in the prosecutoion of any person for the violation of Title 29 (Intoxicating Liquors), unless such evidence is obtained under a search warrant issued and executed in full compliance with the law appertaining.

By its very terms the operation of Section 210, supra, is limited to prosecutions for violations of Chapter 29, relating to intoxicating liquors. It has no application to the present cause, which is a prosecution for vagrancy.

The general rule therefore governs, to the effect that evidence illegally obtained is not inadmissible for that reason. See Ala.Dig., Crim.Law, ☞395 for innumerable authorities.

Relatively few objections were interposed as to the reception or rejection of evidence in the trial below. In no instance where the court's ruling was invoked do we find any semblance of error.

The six charges requested in writing by appellant were all affirmative in nature and properly refused under the developed evidence.

This cause is due to be affirmed and it is so ordered.

Affirmed.