ATTORNEY GENERAL *v.* BAIRLEY.

1. STATUTES—CONSTRUCTION—PENAL STATUTES STRICTLY CONSTRUED.
   The statute (1 Comp. Laws 1915, §§ 245-252) providing for
   the removal of a public officer for misconduct or neglect
   in office is in the nature of a penal statute and must be
   strictly construed.

2. SAME—MALFEASANCE IN OFFICE—REMOVAL OF PUBLIC OFFICER—
   HEARING BEFORE GOVERNOR.
   Where charges of malfeasance in office were preferred
   against defendant sheriff of Monroe county under said
   statute, it was within the discretion of the governor to
   himself hear and determine the truth of the charges, and
   defendant's contention that it was mandatory upon the
   governor to direct the attorney general or the prosecuting
   attorney of Monroe county to conduct an inquiry before
   the circuit court commissioner or judge of probate of said
   county cannot be sustained.

3. SAME—CONSTRUCTION—POWERS OF GOVERNOR — CONSTITUTIONAL
   LAW.
   While the power so exercised by the governor is *quasi*
   judicial in character, it is limited in scope and must be
   exercised in strict compliance with the Constitution and
   laws bearing upon the question.

4. SAME—LEGISLATIVE QUESTION.
   That the right to the process of subpœna, secured to de-
   fendant under 1 Comp. Laws 1915, §§ 246, 247, 248, when
   the charges are referred to the attorney general or prose-
   cuting attorney for investigation, is not provided for if
   the investigation is made personally by the governor, un-
   der the provisions of section 245, is one for legislative
   rather than judicial attention.

Quo warranto by Alex. J. Groesbeck, attorney gen-
eral, against Joseph J. Bairley to try the title to the
office of sheriff of Monroe county. Submitted January
15, 1920. (Docket No. 65.) Judgment of ouster en-
tered February 27, 1920.

On power of court to review action of governor in removing
officer, see note in 39 L. R. A. (N. S.) 788.

*Alex. J. Groesbeck, in pro. per., Thomas G. Baillie* and *John E. Converse,* Assistants Attorney General, for plaintiff.

*Willis Baldwin* and *Oliver J. Golden,* for defendant.

The action is quo warranto, to determine the title of the defendant to the office of sheriff of Monroe county. On April 11, 1919, charges were filed with the governor against defendant, alleging that he had been guilty of malfeasance in office in a number of particulars. *Inter alia,* that while acting as sheriff, he sold some 50 quarts of whiskey which had been placed in his custody by the State food and drug commissioner, Fred L. Woodworth. The petition prayed for removal of the defendant as sheriff of Monroe county, after investigation to be made by the governor in accordance with the statute. Immediately thereafter, the governor made an order, notifying defendant that a hearing would be held on said petition at the executive office at Lansing, on April 18, 1919, beginning at 10 o'clock in the forenoon, at which the governor would preside and listen to the witnesses produced on behalf of the food and drug commissioner as well as any evidence which defendant might produce in defense. The order of the governor, together with a copy of the charges, were personally served on defendant, at Monroe, on the 11th day of April, and an affidavit of service filed in the executive office.

On the 18th of April, 1919, the parties in interest appeared before the governor at the executive office, there being present the food and drug commissioner with his witnesses, the defendant in person, and represented by counsel. On that date, defendant, through his attorneys, asserted to the governor that they were not prepared to go to a hearing in Lansing; that they had no witnesses present at the time except the de-

fendant, and apparently on that date filed the following objections to the method of procedure:

"1. The governor of the State of Michigan has no jurisdiction or authority to proceed with the examination of witnesses outside of Monroe county in this matter.

"2. The governor of the State of Michigan has no authority or jurisdiction to examine the witnesses himself in this matter or to personally conduct the examination of witnesses in this matter.

"3. Because the governor of the State of Michigan has no jurisdiction to require witnesses to be examined in the city of Lansing in this matter, but such witnesses must be examined in the county of Monroe.

"4. Because the governor of the State of Michigan has no jurisdiction to preside over the examination of witnesses sworn in this matter but the examination of witnesses herein must be presided over by the probate judge or the circuit court commissioner of Monroe county, Michigan.

"5. Because there was not served upon the defendant herein any copies of affidavit, or exhibits which were attached to the original petition filed with the governor or which were used and exhibited to the governor and in fact made a part of the charges before the governor.

"6. Because it is unjust and inequitable to force the defendant to go to the city of Lansing and produce and keep his witnesses there for examination, the city of Lansing being about 100 miles distance from Monroe city, the place of residence of the defendant.

"The defendant will not answer further except under protest and by order of the governor."

He thereafter filed an answer under protest in which he denied the material charges set forth in the petition.

On the said 18th day of April, 1919, the governor adjourned the hearing to the 30th of April, 1919, at 10 o'clock in the forenoon, and on the adjourned day all of the parties again appeared, defendant being present in person and represented by counsel. Over

the renewed protest of defendant, the hearing was had, evidence being received on behalf of the food and drug commissioner and defendant being heard in his own defense. No other witnesses were sworn on behalf of defendant. At the close of the testimony the following colloquy took place:

"*Governor Sleeper:* Of course, I want to give the defendant every opportunity that he wants or can have. I thought perhaps it was best to hold this case here, and not have it drag along and ultimately come before me any way and it is possible in the new case, I think perhaps it would.

"On the other hand, I want you to have every opportunity of refuting or bringing such testimony in as you wish. If you feel as though there is any more evidence you would like to put in this case, we will adjourn this court until 9 o'clock tomorrow morning so that you may have witnesses here. Otherwise, I think we will have to proceed to close.

"*Mr. Baldwin:* That would mean then that it is closed?

"*Governor Sleeper:* Yes, unless you want to bring some witnesses here.

"*Mr. Baldwin:* I don't see how we could do anything like what we want.

"*Governor Sleeper:* So far as the character of the sheriff is concerned, I assume it is good or he would not have been elected and it does not seem to be the main issue, and as I said, if there is any other evidence you wish to submit, why we will give you all the time that you would want to get them here.

"*Mr. Baldwin:* We could not get our witnesses and I would prefer then if that is the holding, that it is closed.

"*Governor Sleeper:* No argument either one of you wish to make?

"*Mr. Baldwin:* I told you I would like about fifteen minutes.

"*Governor Sleeper:* You can have all you want.

"*Mr. Baldwin:* To give my idea of the situation.

"*Governor Sleeper:* Do you want any time, Mr. Baillie?

"*Mr. Baillie:* Well, I thought if the case was to be

argued, it might be advisable to have testimony available. All I care to say would be in response to what Mr. Baldwin would say and I waive the opening argument. There may be some things said I would like to answer."

Thereafter, counsel for defendant argued the matter before the governor, who, after causing the testimony to be transcribed and considering the same, issued, under the seal of the State, an order of removal against defendant and declared the office of sheriff of Monroe county to be vacant. The order of removal was duly served upon defendant on the 11th day of July, 1919, and on the following day the circuit judge for Monroe county, under the authority of section 2471, 1 Comp. Laws 1915, entered an order appointing and designating one George A. Huber (one of the coroners of said county) to perform the duties of sheriff until such time as a sheriff could be legally appointed, as provided by law. Defendant refused to recognize either the order of removal or the appointment of his successor but continued and still continues to occupy the office of the sheriff and perform the duties thereof. The situation being thus, the attorney general filed an information in this court in the nature of a quo warranto, to test the title to the office.

BROOKE, J. (*after stating the facts*). The proceedings for removal are based on the statute (1 Comp. Laws 1915, § 245 *et seq.*). Section 245, after providing for the filing and service of charges with the governor, provides:

"But no such officer shall be removed for such misconduct or neglect unless charges thereof shall have been exhibited to the governor as above provided and a copy of the same served on such officer *and an opportunity given him of being heard in his defense.*"

Section 246 follows:

"SEC. 7. The governor may direct the attorney gen-

eral, or the prosecuting attorney of the county in which such officer may be, unless such prosecuting attorney be the officer charged, to conduct an inquiry into the charges made, and the said attorney general or such prosecuting attorney shall thereupon give at least eight days' notice to the officer accused, of the time and place at which he will proceed to the examination of witnesses in relation to such charges, before some circuit court commissioner, or judge of probate, for the same county, and he shall also, at the time of giving such notice, serve on the officer accused a copy of such charges."

The earlier portion of section 245 provides for removal by the governor "when he shall be satisfied from sufficient evidence submitted to him as hereinafter provided that such officer is incompetent to execute properly the duties of his office, or has been guilty of official misconduct," etc. It is the contention of the defendant:

"(1) The statute under which proceedings were brought to oust defendant is in the nature of a penal statute and must be strictly construed.

"(2) The provisions of the statute directing where and how the hearing shall be held are mandatory. The word 'may' in the first line of section 246, 1 Comp. Laws 1915, means 'shall.'

"(3) The procedure must follow the course of the common law and conform to the jurisdictional requisites of a judicial proceeding."

1. The first proposition advanced by the defendant is undoubtedly the law. *Dullam* v. *Willson*, 53 Mich. at page 416; *Metevier* v. *Therrien*, 80 Mich. 187. But this conclusion is not decisive of the question.

2. The real point in issue is raised by the second proposition of defendant to the effect that the word "may" in the first line of section 246 is mandatory and should be read as "shall." Upon this point, we are unable to agree with the contention of counsel for the defendant. Reading the entire statute, sections

245 to 252 inclusive, it is our opinion that it was the legislative intent to permit the governor to himself hear and determine the truth of the charges preferred; or, in his discretion (under section 246), he may direct the attorney general or the prosecuting attorney to proceed with the examination of the witnesses in relation to such charges before the circuit court commissioner or judge of probate of the county in which the officer, against whom the charges are made, resides. If the prosecution is placed in the hands of the attorney general or the prosecuting attorney of the county, the statute must be strictly followed. *Dullam* v. *Willson, supra; Clay* v. *Stuart*, 74 Mich. at page 413.

But nowhere in the statute can we find any mandatory language, *requiring* the governor to direct the prosecution to be made by the attorney general or a prosecuting attorney, except in cases where charges are made against a prosecuting attorney (section 250), when it is made mandatory upon the governor to "direct the attorney general, or the prosecuting attorney of some county adjoining that in which the accused resides, or some attorney at law, to conduct the inquiry into such charges," etc. The very fact that the language of the provision as to prosecuting attorneys in section 250 is mandatory and that as to other officials (in section 246) is permissive, is to our minds persuasive of the legislative purpose. While such inquiries may be, and, according to experience in this State, usually are, conducted by the attorney general or by a prosecuting attorney under the direction of the governor, there is no sound reason, in our opinion, why the governor, if he so chooses, may not, under the provision of section 245, himself conduct the inquiry, provided all the rights of the defendant mentioned in said section are properly safeguarded.

3. If, by this contention, defendant means that the

safeguards provided by the statute for the prevention of injustice to defendant must be strictly observed, he is undoubtedly right. But, while the power exercised by the governor is *quasi* judicial in character, it is limited in scope and must be exercised in strict compliance with the Constitution and laws bearing upon the question.

The principal argument in behalf of defendant is based upon the assertion that when reference is made under sections 246, 247 and 248, there is secured to defendant the right to the process of subpœna, which is not provided for if the investigation is made personally by the governor under the provision of section 245. If there is any merit in this contention, it is a matter that should receive legislative rather than judicial attention.

We find in the record no denial of the sufficiency of the testimony offered before the governor in support of the charges made.

Judgment of ouster from the office of sheriff of Monroe county will follow.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.