## BUBACK *v.* GOVERNOR.

### DECISION OF THE COURT.

1. OFFICERS — REMOVAL — CONSTITUTIONAL LAW — EQUALLY DIVIDED COURT.

Order of Court of Appeals declaring unconstitutional a statute that conferred executive power on a probate court in proceeding to remove a county officer is affirmed by an equally divided court (Const 1963, art 3, § 2; CL 1948, §§ 201.7–201.10, as amended by PA 1960, No 145).

### SEPARATE OPINION FOR AFFIRMANCE.

T. M. KAVANAGH, SOURIS, O'HARA, and ADAMS, JJ.

2. CONSTITUTIONAL LAW—SEPARATION OF POWERS.

*The Constitution divides the powers of government into 3 branches and provides that no person exercising the powers of one branch shall exercise powers properly belonging to another branch unless expressly provided in the Constitution (Const 1963, art 3, § 2).*

3. SAME—REMOVAL POWER—JUDGES.

*Each branch of government has the removal power within that branch except in the case of judges where the removal power is assigned to governor with a concurrence of two thirds of the legislature (Const 1963, art 4, § 16, art 5, § 10, art 6, § 25, art 11, § 5).*

---

### REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2, 12–19] 16 Am Jur 2d, Constitutional Law § 210 *et seq.*
[3–6, 8] 30A Am Jur, Judges § 24.
[7, 9] 16 Am Jur 2d, Constitutional Law § 219 *et seq.*
[10] 20 Am Jur 2d, Courts § 87 *et seq.*
[11] 20 Am Jur 2d, Courts §§ 32, 104.

4. Officers—Removal Power Assigned to Governor or State Agency—Interference by Courts—Arbitrary Exercise of Removal Power.

   Interference by the Supreme Court with exercise of removal power which has been assigned to the governor or to a State agency is refused, except that an arbitrary exercise of the removal power has been subject to judicial review.

5. Same—Removal Proceedings—Courts.

   The act of removing an officer for cause is primarily administrative and, although judicial in a sense, is not an act of such a nature that it requires performance by the judicial branch of government or permits an appeal thereto.

6. Same—Removal Proceedings—Due Process.

   Proceedings under removal power assigned by legislature to executive branch are quasi-judicial proceedings, and the power must be exercised so as to afford due process.

7. Same—Judicial Power.

   Judicial power of courts is power to hear and determine controversies between adverse parties, and questions in litigation, and to make binding orders or judgments.

8. Same—Removal Proceeding—Probate Judges.

   The probate judge exercises no judicial power in that part of a removal proceeding conducted by him upon designation by the governor because he makes no findings and adjudication in the proceeding.

9. Constitutional Law—Separation of Powers—Judicial Branch.

   Constitutional concepts of separation of powers and of the judiciary as one court of justice require that no judge shall exercise powers properly belonging to another branch unless expressly provided in the Constitution (Const 1963, art 3, § 2, art 6, § 1).

10. Courts—Judicial Power.

    All courts of the State form but one court of justice and perform solely by the exercise of judicial power (Const 1963, art 6, § 1).

11. Same—Probate Courts—Jurisdiction, Powers, Duties.

    The jurisdiction, powers, and duties of probate courts and judges thereof shall be provided by law (Const 1963, art 6, § 15).

12. Constitutional Law—Words and Phrases—Provided by Law—Prescribed by Law.

    Phrase "provided by law" as used in the Constitution means the legislature is intended to do the entire job of implementation,

*whereas the phrase "prescribed by law" is used in the Constitution where only the details are left to the legislature and not the overall planning.*

13. SAME—REMOVAL FROM OFFICE—SEPARATION OF POWERS.

*The Constitution's provision that any elected officer of a political subdivision may be removed from office in the manner and for the causes provided by law held, to be subject to provision of separation of powers that no person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in the Constitution (Const 1963, art 3, § 2, art 7, § 33).*

14. STATUTES—CONSTITUTIONAL LAW—REMOVAL OF COUNTY OFFICER—SEPARATION OF POWERS.

*Portion of statutory provision authorizing the governor to direct attorney general or prosecuting attorney of a county to conduct an inquiry into the charges alleged as basis for removal of a county officer before a circuit court commissioner or any probate judge who may be appointed by the governor for such purposes held, unconstitutional insofar as it imposes on a commissioner or probate judge a function in the removal process which is an exercise of the executive power (Const 1963, art 3, § 2; CL 1948, § 201.7 et seq., as amended).*

15. SAME—REMOVAL OF COUNTY OFFICER—SEPARATION OF POWERS.

*Invalidity of a portion of the statute providing for the removal of county officer by proceedings, which at the direction of the governor may be conducted by the attorney general or prosecuting attorney before a circuit court commissioner or probate judge, does not preclude the delegation to conduct a hearing within the executive branch of government, where provided by statute (CL 1948, § 201.7 et seq., as amended).*

SEPARATE OPINION FOR REVERSAL.

DETHMERS, C. J., and KELLY, BLACK, and BRENNAN, JJ.

16. CONSTITUTIONAL LAW—SEPARATION OF POWERS.

*The Constitution requires that the powers of government be divided into 3 branches with no person exercising powers of 1 branch to exercise powers belonging to another branch, except as expressly provided in the Constitution (Const 1963, art 3, § 2).*

17. SAME—PROBATE COURTS—JURISDICTION—POWERS—DUTIES.

*The Constitution provides that the jurisdiction, powers, and duties of probate courts and judges be provided by law (Const 1963, art 6, § 15).*

18. SAME—PROBATE COURTS—RATIFICATION—EFFECT.

By ratifying the Constitution, the people have plainly com-
municated, to the judicial branch as primary guardian of our
Constitution, their desire that the legislature be left free to
provide the jurisdiction, powers, and duties of probate judges.

19. STATUTES—CONSTITUTIONAL LAW—REMOVAL OF COUNTY OFFICER
—SEPARATION OF POWERS.

Statutory provision authorizing the governor to direct attorney
general or prosecuting attorney of a county to conduct an in-
quiry into charges alleged as basis for removal of a county
officer before a circuit court commissioner or any probate judge
who may be appointed by the governor for such purposes held,
constitutional, because the legislation was plainly authorized
by the Constitution (Const 1963, art 6, § 15; CL 1948, § 201.7–
201.10, as amended by PA 1960, No 145).

Complaint in Court of Appeals in the nature of
mandamus by Peter L. Buback against George
Romney, Governor, Frank J. Kelley, Attorney Gen-
eral, and Francis A. Castellucci, Probate Judge for
Macomb County, to prevent the holding of a removal
proceeding prior to completion of a criminal prose-
cution arising out of same circumstances. Court of
Appeals held that statute authorizing governor to
direct attorney general or prosecuting attorneys to
conduct a hearing on charges before probate judge
or circuit court commissioner was an unlawful im-
position of executive functions on judicial officers.
Submitted January 12, 1968. (Calendar No. 15,
Docket No. 51,738.) Decided March 4, 1968. Af-
firmed by an equally divided court.

*Joseph W. Louisell* and *Ivan E. Barris,* for
plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *William J. Mul-
laney* and *Stewart H. Freeman,* Assistant Attorneys
General, for defendants.

ADAMS, J. (*for affirmance*).  Plaintiff originally sought to prevent the holding of a removal proceeding under CL 1948, § 201.7 *et seq.*, as amended (Stat Ann 1956 Rev and Stat Ann 1965 Cum Supp § 6.697 *et seq.*), prior to completion of a criminal prosecution against him arising from the same circumstances.  It was claimed that to hold such a proceeding would violate plaintiff's privilege against self-incrimination and deprive him of procedural due process.  The criminal prosecution has been dismissed.  Plaintiff's claims for injunctive and other relief, denied by the Court of Appeals, are now moot and will not be considered.

Upon a motion for rehearing in the Court of Appeals, the constitutional question as to separation of powers was raised.  The Court held:

"The provisions of CL 1948, § 201.7 (Stat Ann 1965 Cum Supp § 6.697), authorizing the governor to direct the attorney general or prosecuting attorney to conduct a hearing on the charges alleged as the basis for removal of a county officer before a probate judge or circuit court commissioner is an unlawful imposition of executive functions on judicial officers in contravention of the provisions of the Michigan Constitution of 1963, art 3, § 2.

"This opinion is based on the authority and reasoning of the following cases: *In re Slattery* (1945), 310 Mich 458, and *Local 170, Transport Workers Union of America,* v *Genesee Circuit Judge* (1948), 322 Mich 332, and the exposition of the reasoning approved in those cases as set forth in the opinion of Justice Cardozo in the case of *In the matter of Richardson,* 247 NY 401 (160 NE 655).  See, also, *Township of Dearborn* v. *Dearborn Township Clerk* (1952), 334 Mich 673."  Order of Court of Appeals.  Not officially reported.

The decision of the Court of Appeals was cross-appealed to this Court by the attorney general.

*The Statute.*

CL 1948, § 201.7 *et seq.,* as amended (Stat Ann 1956 Rev and Stat Ann 1965 Cum Supp § 6.697 *et seq.*), provides that the governor may direct the attorney general or the prosecuting attorney of the county "to conduct an inquiry into the charges made, * * * at which he will proceed to the examination of witnesses in relation to such charges before some circuit court commissioner * * * or *any judge of probate* who may be appointed by the governor for such purpose [emphasis supplied]." Upon application of the accused officer, the commissioner or probate judge shall require the indorsement of witnesses in the same manner and subject to the same rules as required in criminal cases. He shall observe the rules of evidence followed in chancery cases and shall have authority to rule on questions of procedural law. He may authorize the taking of depositions in the same manner as provided for civil cases. In the present case, Governor Romney indicated that the question of delaying the commencement of the removal proceedings was one to be decided solely by Probate Judge Castellucci.

*Constitutional Provisions.*

Article 3 § 2, of the 1963 Constitution provides:

"The powers of government are divided into three branches: legislative, executive and judicial. *No person exercising powers* of one branch shall exercise *powers properly belonging to another branch except as expressly provided in this constitution.*" (Emphasis supplied.)

Immediately following article 3, the legislative branch, the executive branch, and the judicial branch are respectively dealt with in articles 4, 5, and 6.

Article 6, § 1, reads as follows:

"The *judicial power* of the State *is vested exclusively in one court of justice* which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, *one probate court,* and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house." (Emphasis supplied.)

Article 6, § 15, reads as follows:

"In each county organized for judicial purposes there shall be a probate court. The legislature may create or alter probate court districts of more than one county if approved in each affected county by a majority of the electors voting on the question. *The legislature may provide for the combination of the office of probate judge with any judicial office of limited jurisdiction within a county* with supplemental salary as provided by law. *The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law.* They shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law." (Emphasis supplied.)

Article 6, § 19, provides as follows:

"The supreme court, the court of appeals, the circuit court, *the probate court* and other courts designated as such by the legislature shall be courts of record and each shall have a common seal. Justices and judges of courts of record must be persons who are licensed to practice law in this State. No person shall be elected or appointed to a judicial office after reaching the age of 70 years." (Emphasis supplied.)

The removal power with which we are here concerned is contained in local government article, article 7, § 33:

"Any elected officer of a political subdivision may be removed from office in the manner and for the causes provided by law."

The broad authority to remove from office is dealt with in various sections of the 1963 Michigan Constitution. For example, article 4, § 16, deals with the power of each house of the legislature to expel a member. Article 6, § 25, deals with the power of the governor to remove a judge on concurrent resolution of two-thirds of the members elected to and serving in each house of the legislature.[*] Article 5, § 10, deals with the governor's power to remove any elective or appointive State officer, except legislative or judicial. Article 11, § 5 (civil service), provides: "No * * * removals in the classified service shall be made for religious, racial or partisan considerations."

It will be seen from the above that, in general, the constitutional scheme for removals from office has been to assign to each branch of government the removal power within that branch. In the case of judges, an exception, the removal power is assigned to the chief executive with the concurrence of two thirds of the legislature. Other removals from office within the judicial branch, by decision of this Court —*Gray* v. *Clerk of Common Pleas Court* (1962), 366 Mich 588—are a judicial function. Absent constitutional restraint, the removal power is implied in all governmental operations—*Hawkins* v. *Common Council of the City of Grand Rapids* (1916), 192 Mich 276—but is normally exercised in a specific branch of State government as a part of the operations and powers of that branch.

---

[*] See, also, Const 1963, art 6, § 4: "The supreme court shall not have the power to remove a judge."—REPORTER.

### Removals for Cause by the Executive and Exercise of Judicial Power.

Where the removal power has been assigned to the governor or to a State agency, this Court has refused directly to interfere with the exercise of that power. *Clay* v. *Stuart* (1889), 74 Mich 411; *Fuller* v. *Attorney General* (1893), 98 Mich 96; *Speed* v. *Detroit Common Council* (1894), 98 Mich 360; *Attorney General* v. *Jochim* (1894), 99 Mich 358; *Attorney General* v. *Berry* (1894), 99 Mich 379; *Attorney General* v. *Hambitzer* (1894), 99 Mich 380; *In re Fredericks* (1938), 285 Mich 262; *Lilienthal* v. *City of Wyandotte* (1938), 286 Mich 604, rehearing denied 1939. However, an arbitrary exercise of the removal power is subject to judicial review. *People, ex rel. Andrews,* v. *Lord* (1861), 9 Mich 227; *Dullam* v. *Willson* (1884), 53 Mich 392; *Lilienthal* v. *City of Wyandotte, supra; McDonald* v. *Schnipke* (1968), 380 Mich 14.

The reasons why the role of the courts in removal proceedings is an exceedingly limited one and why a court should avoid involvement were examined in *Koeper* v. *Detroit Street Railway Commission* (1923), 222 Mich 464, and again in *In re Fredericks, supra,* in which this Court said (p 265):

"The act of removing for cause  *  *  *  [is] primarily administrative and, although judicial in a sense, not an act of such a nature that it requires performance by the judicial branch of the government or permits an appeal thereto."

The removal power here under consideration was assigned by the legislature to the executive branch of State government. Even though the proceeding is an executive one, removal from office for cause is also a *quasi*-judicial proceeding. The power must be exercised in such fashion as to afford due process. See, for example, *Dullam* v. *Willson, supra; Speed* v.

*Detroit Common Council, supra; Attorney General
v. Bairley* (1920), 209 Mich 120; *In re Fredericks,
supra; Lilienthal* v. *City of Wyandotte, supra.* The
mere fact that it is to be conducted in a judicial or
*quasi*-judicial fashion does not make it any less an
executive proceeding. Within the executive branch
are such bodies as the State tax commission, the
workmen's compensation appeal board and the cor-
poration tax appeal board, all performing *quasi*-
judicial functions.

It may be noted that the second sentence of article
1, § 17, the due process section of the 1963 Constitu-
tion, reads:

"The right of all individuals, firms, corporations
and voluntary associations to fair and just treat-
ment in the course of legislative and executive in-
vestigations and hearings shall not be infringed."

The convention comment on this sentence in the
address to the people states (p 15):

"The second sentence incorporates a new guar-
antee of fair and just treatment in legislative and
executive investigations. This recognizes the ex-
tent to which such investigations have tended to
assume a quasi-judicial character. The language pro-
posed in the second sentence does not impose cate-
gorically the guarantees of procedural due process
upon such investigations. Instead, *it leaves to the
legislature, the executive and finally to the courts,
the task of developing fair rules of procedure appro-
priate to such investigations.* It does, however,
guarantee fair and just treatment in such matters."
(Emphasis supplied.)

The statute permits removal proceedings to be
conducted by a probate judge designated by the gov-
ernor. If such a designation is made, part of the
proceeding required of the governor is assigned by
him to the probate judge. The examination is an

integral part of the executive removal proceeding no matter by whom it is conducted. The rulings of the probate judge with regard to the indorsement of witnesses or on questions of evidence all bear importantly on the proceeding.

From earliest Michigan cases, this Court has clearly defined judicial power:

"By the judicial power of courts is generally understood the power to hear and determine controversies between adverse parties, and questions in litigation." *Daniels* v. *People* (1859), 6 Mich 381, 388.

"It is the inherent authority not only to decide, but to make binding orders or judgments, which constitutes judicial power." *Underwood* v. *McDuffee* (1867), 15 Mich 361, 368.

These propositions were affirmed in *Risser* v. *Hoyt* (1884), 53 Mich 185, 192, wherein there is the following discussion of judicial power:

"By article 6 of our Constitution the judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. The legislature is also authorized to establish municipal courts in cities, and courts of conciliation. The courts referred to in this article are permanent organizations for the administration of justice; and it has been held that the term does not apply to those special tribunals which the law occasionally calls into existence for particular exigencies, and which cease to exist when the occasion ceases. In such cases judicial power to a limited extent is lodged in the hands of different officers for specified purposes, to be called into action as occasion may require. The exercise of this power by such tribunals is exceptional, and has been recognized and held valid only because they were under statutes in force before the Constitution was adopted, and which it was believed were not intended to be abrogated by it; or because the proceedings were preliminary and collateral to

the principal proceedings, and where the officer does not render a final adjudication on the rights of the parties. *Rowe* v. *Rowe,* 28 Mich 356; *Shurbun* v. *Hooper,* 40 Mich 503; *Daniels* v. *People,* 6 Mich 381; *Edgarton* v. *Hinchman,* 7 Mich 352; *Streeter* v. *Paton,* 7 Mich 341. But the exercise of judicial power in its strict legal sense can be conferred only upon courts named in the Constitution. The judicial power referred to is the authority to hear and decide controversies, and to make binding orders and judgments respecting them. *Daniels* v. *People,* 6 Mich 381; *Underwood* v. *McDuffee,* 15 Mich 361."

See, also *Goetz* v. *Black* (1932), 256 Mich 564, 569, 570, for a further definition of judicial power.

Since the probate judge makes no findings and adjudication in a removal proceeding, it is evident that he does not exercise judicial power.

The attorney general argues that nonjudicial roles have been assigned to courts in the past and to probate courts in particular.

In *Houseman* v. *Kent Circuit Judge* (1885), 58 Mich 364, 367, an act for the construction of drains was held unconstitutional because:

"The duties which it imposes upon the court are not judicial in their nature, but belong to the administrative branch of the government. The sending out surveyors or other persons to make examination or surveys to re-levy taxes in place of invalid ones, are each and all acts which do not pertain to the judicial branch of the government.

"The design of the Constitution is that each of the three branches of the government shall be kept, so far as practicable, separate, and that one of the departments shall not exercise the powers confided by that instrument to either of the others. Any legislation, therefore, authorizing an invasion of this design, and conferring upon the judiciary the exercise of powers belonging to either of the others, cannot be regarded as valid."

In *Locke* v. *Speed* (1886), 62 Mich 408, 413, a proceeding in mandamus to compel a circuit judge to consider the account of a coroner for fees incident to an inquest, it was said:

"Both the right and duty of the county or circuit court to make the order of approval asked for in this case, so far as I have been able to ascertain, do not seem to have been questioned until this application; and I think it is too late now to urge that it was incompetent for the legislature to require such service of circuit courts. *Goodall* v. *Henkel,* 60 Mich 382 (headnote 3). Such action of the legislature, followed by long and continued acquiescence by the people and the courts, unless in open and palpable violation of some clearly expressed provision of the Constitution, should be allowed to control. I think the case comes within the clause, 'otherwise provided by law,' contained in the section of the eighth article of the Constitution above referred to.

"It is suggested by the attorney general that it was the design of the framers of the present Constitution that the duties of the three departments of the State government should be kept separate as far as possible, and that those appertaining to the other departments should not be required of the judicial. This is unquestionably true. *Houseman* v. *Kent Circuit Judge,* 58 Mich 364, 367. But the act required to be done is preliminary in its character, and in its nature, to a certain extent, is judicial, and, in my judgment, more properly comes under the duties of that department than under either of the others."

To the contrary, in *Allor* v. *Wayne County Auditors* (1880), 43 Mich 76, 96, 97, this Court stated:

"Upon that subject it is for most purposes enough to say that no court, in the exercise of its functions, can be lawfully subjected to the control or interference of any executive or ministerial authority, or can receive directions for any purpose except from

such other courts as are authorized by the Constitution to have 'superintending control over inferior courts.' No court has a right to allow any other interference or to submit to it."

### Removals of Elected Officers of Political Subdivisions for Cause Are Subject to Doctrine of Separation of Powers.

The above cases and numerous others were decided previous to the 1963 Constitution. The strengthening of the entire judiciary by that Constitution, particularly of the probate courts, makes doubtful their present applicability and renders untenable the attorney general's claim that probate courts are a different variety than other courts.

The Constitution of 1963, by article 3, § 7, continues in force the statute laws not repugnant to its provisions. The fundamental issue is whether CL 1948, § 201.7, as amended, survived after January 1, 1964, the effective date of the new Constitution, and continues in force.

(a) Constitution of 1835.

The separation of powers article (article 3) in the Constitution of 1835 did not specifically proscribe individual conduct since it asserted that one department shall never exercise the powers of another department. Under that Constitution (article 6) the judicial power was vested in one Supreme Court and such other courts as the legislature might establish. Section 3 of that same article provided that a court of probate shall be established in each of the organized counties. It made no mention of the jurisdiction of that court.

By article 8 the legislature was to provide by law for the removal of county officers. The legislature placed the power in the governor to remove all county officers except county judges, judges of pro-

bate and county clerks. RS 1846, ch 15, § 6. If the charges did not involve the prosecuting attorney, the governor could direct him to conduct an inquiry. Examination of witnesses was to be before some county judge. The county judge made no decision on the merits of the removal charge. He certified the transcript and delivered it to the prosecuting attorney for transmittal to the governor.

Under the 1835 Constitution, the county judge had been endowed by the legislature with judicial power but the separation of powers article was so obscurely worded as to leave doubtful its application to individual action.

(b) Constitution of 1850.

The separation of powers article (article 3) of the 1850 Constitution cast the proscription in terms of personal conduct by providing that no person belonging to one department shall exercise the powers properly belonging to another "except in the cases expressly provided in this Constitution." The word "cases" as there used had the same meaning as situations or conditions. Under article 6 the judicial power was vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace.

By article 6, § 13, courts of probate were to be established in each of the organized counties. "The jurisdiction, powers and duties of such courts shall be prescribed by law."

Removal of county officers was covered by article 12 which stated that the legislature shall provide by law for the removal of any officer elected by a county in such manner and for such cause as to it shall seem just and proper. County courts were discontinued. A circuit court commissioner was substituted for the county judge as the person before whom examination of witnesses in removal proceedings might be held. See PA 1853, No 19. By PA 1871, No 63, a judge

of probate was added as an officer before whom such examination could be held.

There appear to be no adjudicated cases or reported decisions under the 1850 Constitution holding that a judge of probate could not properly be designated by the legislature as one of the officials before whom the evidence in a removal proceeding could be held nor are there any cases in which the question was raised.

(c) Constitution of 1908.

The separation of powers article (article 4) in this Constitution was the same as in the 1850 Constitution. By article 7 judicial power was vested in one Supreme Court, circuit courts, probate courts, and justices of the peace. A modification was made relating to inferior courts established by the legislature.

Article 7, § 13, dealing with the jurisdiction of probate courts, was substantially changed from the corresponding provision in the 1850 Constitution. The Constitution of 1850 stated:

"The jurisdiction, powers and duties of such courts shall be prescribed by law."

In the 1908 Constitution the language read:

"In each county organized for judicial purposes, there shall be a probate court. The jurisdiction, powers and duties of such courts and of the judges thereof shall be prescribed by law, and they shall also have original jurisdiction in all cases of juvenile delinquents and dependents."

After the adoption of the 1908 Constitution, the Supreme Court held that under section 13 of article 7 the legislature had plenary authority to prescribe the powers and duties of the probate courts and the judges thereof. *In re Merrill* (1918), 200 Mich 244, 248.

The provision for removal of county officers in article 9, § 8, was slightly different from the corresponding provision in the 1850 Constitution and, in substance, said that any officer elected by a county may be removed from office in such manner and for such cause as shall be prescribed by law.

(d) Constitution of 1963.

The language relating to the separation of powers article (article 3, § 2) is changed and made more precise. Under the 1908 Constitution there was an opportunity to question the meaning of the words *"the powers* properly belonging to another [department] (emphasis supplied)." Did this mean the whole power relating to any particular objective? Under the present Constitution the proscription is against the exercise of *powers* properly belonging to another branch. The term "powers" is all inclusive, meaning that power which is exercised and all of its components, stages, or steps. Under the 1908 Constitution, the exception read "except *in the cases* expressly provided." [Emphasis supplied.] Now the exception reads "except *as expressly provided* in this Constitution." [Emphasis supplied.] This change removes the doubt as to what was a case or situation intended to be covered as an exception by language found elsewhere in the 1908 Constitution. The language now means that the exception must be expressed in the Constitution itself, whereas the language of the 1908 Constitution could have been construed to mean the legislature might deal with "the situation" as being an exception. Under the 1963 Constitution, the language makes it clear that the exception relates to the crossing over from one branch to another in the exercise of powers. Consequently, where the legislature is authorized to act, it is required to conform to the separation of powers concept as being fundamental and basic and may

grant an exception only when it can find authorization in the Constitution.

For the first time, the judicial article of the 1963 Constitution (article 6, § 1) speaks of the judiciary in terms of one court of justice. That one court of justice is the judicial branch. The courts which make up the one court of justice do not exercise identical or corresponding jurisdiction. Each has its particular level of judicial administration. But since all courts form but one court of justice to which the judicial power has been granted by the Constitution, it seems clear all courts perform solely by the exercise of judicial power. Therefore the separation of powers article would apply to a court as follows: No person (a judge) exercising powers (judicial power) of one branch (the court of justice which constitutes the judicial branch) shall exercise powers properly belonging to another branch. It then becomes necessary to look for an exception (expressly provided) in the Constitution.

The Constitution of 1963 does not define the entire jurisdiction of probate courts. This responsibility is left to the legislature by article 6, § 15:

"The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law."

The committee on style and drafting of the constitutional convention of 1961 made a distinction in the use of the words "prescribed by law" and the words "provided by law." Where "provided by law" is used, it is intended that the legislature shall do the entire job of implementation. Where only the details were left to the legislature and not the overall planning, the committee used the words "prescribed by law." See 2 Official Record, Constitutional Convention of 1961, pp 2673, 2674.

The provision of the 1963 Constitution last above quoted placed the responsibility on the legislature to draft the law but did not grant authority for departure from the requirements and proscriptions of the Constitution. It does not have the effect of permitting disregard of the separation of powers article.

The removal power, appearing as it does in the article on local government, might have been implemented by the legislature solely on the level of local government without involving any of the three branches of State government. See *Speed* v. *Detroit Common Council, supra.* However, when a particular removal power is assigned to one branch of government, that power must be exercised within that branch if the doctrine of separation of powers is to be meaningful. The framers of the Constitution did not expressly provide for the joint exercise of the removal power by two or more branches of government. Since there is no express provision to this effect, it must be concluded that article 7, § 33, is subject to the provisions of article 3, § 2.

The statute (CL 1948, § 201.7 *et seq.,* as amended) does not pass the survival test under the 1963 Constitution. It imposes on a probate judge a function in the removal process which is a partial exercise of executive power because the legislature by statute placed the obligation and responsibility for removal of county officers in the governor. The function of hearing witnesses, including the respondent, can be performed by the governor. If a probate judge is appointed by the governor to undertake that function, the judge becomes the governor's substitute.

The attorney general states in his brief, in commenting on *In the Matter of Richardson* (1928), 247 NY 401 (160 NE 655):

"We would have no hestitancy in conceding great force to the *Richardson Case,* at least as to its first

ground of decision, if the Michigan statute had authorized the governor to name (and he had so acted) *one of our circuit judges* for the purpose in question." (Emphasis supplied.)

The forceful reasoning of Judge Benjamin Cardozo in *Richardson,* as found by the Court of Appeals, is applicable here. It applies to Michigan probate courts which are a part of a single court system as well as to the office of circuit court commissioner as long as that office as presently constituted continues to exist.

The superintending control of all courts is placed by the Constitution in the Supreme Court. To hold that executive, *quasi*-judicial, administrative, or ministerial functions can be shouldered at will upon the judicial branch of government would ignore the strengthening of the judiciary that occurred in the 1963 Constitution. To permit the chief executive to pick and choose statewide among the probate judges in selecting a participant in an executive removal proceeding would be to require the probate judge to exercise powers belonging to the executive branch of State government.

Based upon the reasoning of this opinion, the order of the Court of Appeals is affirmed. Such affirmance is not to be construed as in any way affecting the validity of CL 1948, § 201.7 *et seq.,* as amended, insofar as the executive authority to conduct a removal proceeding for cause is therein set forth (see *Attorney General* v. *Bairley, supra*), nor should it be construed that only the governor, or the lieutenant governor in the absence of the governor from the State, must conduct such hearing in person where authority to delegate within the executive branch of government is provided by statute as is exemplified by such delegation of authority in the uniform criminal extradition act (PA 1937, No 144

[CL 1948, § 780.1 *et seq.* (Stat Ann 1954 Rev § 28-.1285[1] *et seq.*)]).

T. M. KAVANAGH, SOURIS, and O'HARA, JJ., concurred with ADAMS, J.

BLACK, J. (*for reversal*). I accept the risk of obscuring the obvious by discussing it. Exclusive of quotation, the discussion will in any event be brief.

We need but read two sections of the Constitution to ascertain, as against belated attack below and plaintiff's casual presentation here,[1] the validity of CL 1948, §§ 201.7–201.10, as amended by PA 1960, No 145 (CLS 1961, §§ 201.7, 201.10, Stat Ann 1956 Rev and Stat Ann 1968 Cum Supp §§ 6.697–6.700). The constitutional sections, emphasized by the present writer, read as follows:

"Sec. 2. The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch *except as expressly provided in this constitution.*" (Const 1963, art 3, § 2).

"Sec. 15. In each county organized for judicial purposes there shall be a probate court. The legislature may create or alter probate court districts of more than one county if approved in each affected county by a majority of the electors voting on the question. The legislature may provide for the combination of the office of probate judge with any judicial office of limited jurisdiction within a county with supplemental salary as provided by law. *The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law.* They shall have original jurisdiction in all cases of

---

[1] See review of the record made in the Court of Appeals, and consideration of *In the Matter of Richardson,* 247 NY 401 (160 NE 655), both post.

juvenile delinquents and dependents, except as otherwise provided by law." (Const 1963, art 6, § 15.)

The legislature has cast upon probate judges the power and duty to proceed and certify, when directed by the governor, as in mentioned sections 201.7–201.10 provided. Whether the legislature did or did not intend by those sections to vest probate judges with executive power is of no present moment. That body was authorized unconditionally to enact such an investiture, the express exception of quoted section 2 and the underscored sentence of quoted section 15 considered. No tome of esoteric prolixity could possibly render that conclusion doubtful; certainly in the minds of that great mass of mankind which considered and then adopted the Constitution of 1963. And when this appellate Court goes about the task of applying any allegedly abstruse part or parts of that Constitution, it is "the sense most obvious to the common understanding" that concerns us; not the usually conflicting notions of delegates, visionary professors, and intellectuals of the legal peerage. At least that is what eminent justices have told us with acceptance enduring thus far.

Mr. Justice Story:

"Constitutions are not designed for metaphysical or logical subleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." (1 Story, Constitution [5th ed], § 451, p 345.)

Mr. Justice CAMPBELL (Mr. Justice COOLEY concurring):

"The cardinal rule of construction, concerning language, is to apply to it that meaning which it would naturally convey to the popular mind, in all cases where the propriety of such construction is not negatived by some settled rule of law. In all instruments which are submitted for confirmation to the people themselves, and which derive all their validity from a popular vote, such a construction is peculiarly necessary; for otherwise they would be defrauded of the right to frame their own government according to their own will." (*People* v. *Dean* [1866], 14 Mich 406, 417, 418.)

Mr. Justice COOLEY (quoted in *May* v. *Topping* [1909], 65 W Va 656, 660 [64 SE 848, 850]):

"A Constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument, in the belief that that was the sense designed to be conveyed.' (Cooley's Constitutional Limitations [6 ed, 1890], ch 9, p 81)." (Emphasis supplied by present writer.)

By quoted sections 2 and 15 the people have plainly communicated, to the third branch as primary guardian of our Constitution, their desire that the legislature be left free to provide the "jurisdiction, powers and duties" of probate judges. I expect that any A, B, or C student of high school English or

government (if not all the rest), would experience little difficulty in reaching that conclusion after having been assigned the task of reading, parsing and analyzing sections 2 and 15 to ascertain whether the *electors* intended to restrict the legislative power as claimed in this case. It is still true, as said in *Mapp* v. *Ohio* (1961), 367 US 643, 657 (81 S Ct 1684, 1693, 6 L ed 2d 1081, 1091, 84 ALR2d 933, 944), that "There is no war between the Constitution and common sense."

The trouble here is not with the words and phrases employed in sections 2 and 15 or, for that matter, in any section of the judicial article. There is no ambiguity in any of these sections, so far as concerns the presented question of constitutionality of the cited statutory provisions. Our difficulty, rather, lies with that fastidious new style of highly "ismy" erudition which accepts nothing as settled and searches busily for ways to confound and complexify the law's quest for certainty. The once understood and accepted purpose of that quest was to bring about determination of the great bulk of potentially litigable matters upon the then usually dependable advices of eminent counsel; who in turn were entitled to and did rely upon appellate stability when the words and phrases of long since mature statutes and constitutional provisions were brought into scrutiny. It was not to invite more and then, multiplied, more controversies into the courts for multifarious trials and appeals according to new whims and new pressures. Hence it is not wholly true today that lawyers cause litigation; the guilt of appellate judges in that regard has become measurably greater.

This action took a reverse turn after it was instituted and initially decided in the Court of Appeals. Plaintiff's complaint as filed was designed to obtain a writ of superintending control. The prayer thereof was for *temporary* restraint of the defendants

from proceeding with steps ordered by the governor, pursuant to said sections 201.7–201.10, and for an ultimate mandate requiring the defendants to conclude "the criminal proceedings now pending against the plaintiff before taking further steps directed to the commencement of the taking of testimony in the removal proceedings." The complaint thus framed, and the attorney general's answer thereto, went to due submission and resulted in an order, not published in the reports, denying relief as prayed. That order was entered by Division 1 November 18, 1966. November 29, 1966 plaintiff filed a petition for rehearing. January 18, 1967 plaintiff filed a "Supplement to Petition for Rehearing," raising for the first time the constitutional question considered above. On March 3, 1967 Division 1 filed an opinion it did not publish, which, after preliminary recitals of the procedure taken after the order of November 18 was entered, concluded as follows:

"The provisions of CL 1948, § 201.7, authorizing the governor to direct the attorney general or prosecuting attorney to conduct a hearing on the charges alleged as the basis for removal of a county officer before a probate judge or circuit court commissioner is an unlawful imposition of executive functions on judicial officers in contravention of the provisions of the Michigan Constitution of 1963, art 3, § 2.

"This opinion is based on the authority and reasoning of the following cases: *In re Slattery* (1945), 310 Mich 458, and *Local 170, Transport Workers Union of America* v. *Genesee Circuit Judge* (1948), 322 Mich 332, and the exposition of the reasoning approved in those cases as set forth in the opinion of Justice Cardozo in the case of *In the matter of Richardson,* 247 NY 401 (160 NE 655). See, also, *Township of Dearborn* v. *Dearborn Township Clerk* (1952), 334 Mich 673."

This was the extent of treatment accorded by Division 1 to the rehearing-raised constitutional question and such was the posture of the case when the attorney general cross-appealed. The case having been admitted here on grant of leave, plaintiff devoted his original brief exclusively to the questions raised in his original complaint. Thereafter he filed a reply brief consisting only of the following:

"In reply to cross-appellants' assertion, as set forth under counterstatement of questions involved III, that section 201.7 of the compiled laws of 1948, authorizing the governor to direct the attorney general or prosecuting attorney to conduct a hearing on the charges alleged as the basis for removal of a county officer before a probate judge or circuit court commissioner does not contravene the doctrine of separation of powers as expressed in Const 1963, art 3, § 2, plaintiff-appellant and cross-appellee submits that the case of *In Re Richardson,* 247 NY 401 (160 NE 655), (Court of Appeals, New York, 1928), should and must impel this Court to reach a contrary conclusion.

"Further, plaintiff-appellant and cross-appellee relies upon the succinct language of the Court of Appeals which is quoted verbatim at pages 22 and 23 of the defendants-appellees and cross-appellants' brief."

Since plaintiff relies exclusively on *In Re Richardson,* 247 NY 401 (160 NE 655), and since Division 1 did likewise in part, it need only be pointed out that no constitutional provision such as we have here, providing that the jurisdiction, powers and duties of the class of judges in question should be provided by law, was cited, involved, or discussed in that case.

*To conclude:* We may no more maim or truncate the legislative power provided by section 15 of article 6 than clip from the same article the nonjudicial duty (*Allor* v. *Wayne Co. Auditors* [1880], 43 Mich

76, 100, 101; *Attorney General* v. *Loomis* [1905], 141 Mich 547, 560; *In re Emery* [1907], 149 Mich 383, 385) which by section 29[2] is presently cast upon justices and designated judges. So it really does not matter whether the statutory provisions in question do or do not require probate judges to perform nonjudicial duties. If they do, the legislation thus questioned was plainly authorized by Const 1850, art 6, § 13, then by Const 1908, art 7, § 13, and now is upheld by Const 1963, art 6, § 15. This was and is true since all 3 Constitutions have, in the separation of powers section, made the same express exception.

I vote to reverse and remand for reinstatement of the first order entered below, that of November 18, 1966. No costs should be allowed.

Dethmers, C. J., and Kelly and Brennan, JJ., concurred with Black, J.

---

[2] "Sec. 29. Justices of the supreme court, judges of the court of appeals, circuit judges and other judges as provided by law shall be conservators of the peace within their respective jurisdictions."