## In re Douglas R. Williams

[577 A.2d 686]

No. 87-362

Present: Allen, C.J., Gibson, Dooley and Morse, JJ.

Opinion Filed May 11, 1990

*Henry C. Brislin*, City Attorney, Rutland, for Plaintiff-Appellant.

*Cortland Corsones* of *Corsones and Corsones*, Rutland, for Defendant-Appellee.

**Dooley, J.** This proceeding involves district court review of the grounds and procedure for dismissing a police officer. We hold that the statute that authorizes this proceeding violates

the separation of powers provision of the Vermont Constitution, Chapter II, § 5, and dismiss the proceeding.

In October of 1986, the Rutland City Police Chief gave Douglas Williams, an officer in the Rutland Police Department, a notice of dismissal without pay effective seven days later. The notice also served as a request to the Rutland Board of Civil Authority to convene a hearing on the Chief's action. On November 3, 1986, defendant Williams exercised his option pursuant to 24 V.S.A. § 1932(c) to file with the district court a notice of election to have the case heard before that court. The district court held a hearing and issued findings of fact and conclusions of law on April 27, 1987. The court concluded that the dismissal of defendant was constitutionally defective since the procedure used did not strictly comply with the city charter and ordinances, and the applicable Vermont statutes. The court also concluded that defendant could not receive a fair hearing because the dismissal was based on incidents that occurred eight years earlier. Finally, the court concluded that the evidence was not sufficient to find defendant guilty of misconduct.

The City of Rutland has appealed here alleging that the district court did not have jurisdiction, and, in any event, that it made a number of errors fatal to its conclusions. Defendant moved to dismiss the appeal, arguing that no appellate jurisdiction lies as held in *City of Winooski v. Vincent*, 137 Vt. 252, 252, 402 A.2d 1192, 1192 (1979), and otherwise argues that the lower court decision should be affirmed. Following argument, we requested supplemental briefing on whether the statutory scheme imposes nonjudicial responsibilities on the judiciary in violation of the separation of powers section of the Vermont Constitution. Vt. Const. ch. II, § 5 (the departments "shall be separate and distinct, so that neither exercise the powers properly belonging to the others").*

---

* Defendant argues that we should not reach the separation of powers issue because it was not raised by the city below. The issue goes to whether the trial court had any jurisdiction and thus can be raised for the first time on appeal. See *Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 617, 471 A.2d 224, 225 (1983). Since it involves the proper powers and responsibilities of the judicial branch, it is incumbent on us to raise the issues even if the parties did not.

24 V.S.A. § 1932(a) provides that when "it appears to the appointing authority" of a municipal police officer that the officer has become negligent or derelict in official duty, or is guilty of conduct unbecoming an officer, the appointing authority must set a hearing before the legislative body of the municipality on the charge. The officer can go to hearing before the legislative body or, at least twenty-four hours before the hearing time, file with the district court a notice of election to have the hearing before the district court. 24 V.S.A. § 1932(c). If the officer elects to go to the district court, the court must set the matter for hearing within ten days from the filing of the notice. In such a case, the court must determine "the facts and certify its findings, which shall be final, to the legislative body." *Id.*

If the legislative body or the court finds that the officer is guilty of the alleged charges, "the legislative body shall have the power by majority vote to remove said officer or to suspend him without pay for a period of time not to exceed sixty days." 24 V.S.A. § 1932(d). The statute does not require that the legislative body take any action on its findings or those of the district court. If the officer is found not guilty, however, the statute appears to prohibit the legislative body from taking any action. 24 V.S.A. § 1932(e). All of this procedure is superseded if the municipality "has charter provisions providing for tenure of police officers during good behavior with removal only after hearing and for cause." 24 V.S.A. § 1934.

The statute makes our district courts hearing officers for municipalities. As agents of the municipality, the court "certifies" its action to the legislative body of the municipality. The court's determination that an officer is guilty of the charges has no effect unless a majority of the governing body of the municipality votes to give it a particular effect. Ironically, the court is involved because the municipality has no standards it must follow in deciding whether to remove or discipline an officer. If the municipality adopts a charter provision that allows for removal of an officer "only after hearing and for cause" the court is not involved in the hearing. 24 V.S.A. § 1934.

By letter to the Governor, this Court advised the Governor and Legislature that a statute that attempted to require

this Court to answer questions about the constitutionality of pending legislation was unconstitutional. *In re Constitutionality of House Bill 88*, 115 Vt. 524, 64 A.2d 169 (1949). The Court reasoned that in the absence of constitutional authorization for such a procedure, the giving of advisory opinions would be "extra-judicial" and violate the separation of powers between the judicial and legislative branches. *Id.* at 527–28, 64 A.2d at 171. The power of courts is "'to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.'" *Id.* at 529, 64 A.2d at 172 (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). This power does not include giving advisory opinions "upon a question of law not involved in actual and bona fide litigation brought before the Court in the course of appropriate procedure." *Id.*

More recently, this Court applied the principle of *In re Constitutionality of House Bill 88* to a statute that authorized the judiciary to determine the winner of a contested election for a seat in the Vermont House of Representatives. See *Kennedy v. Chittenden*, 142 Vt. 397, 457 A.2d 626 (1983). We held that the statute conferred powers on the judiciary beyond our constitutional function and in violation of Chapter II, § 5 of the Constitution. We relied particularly on the fact that the Legislature is the final "judge of the elections and qualifications of [its] own members" under Chapter II, § 14 of the Constitution, and that any action the Court took would be subject to "revision or reversal" by the Legislature. *Id.* at 399, 457 A.2d at 627. This limited effect of the judicial action ran afoul of the "precept that the exercise of judicial authority must lead to a final enforceable result and not be merely informative or advisory." *Id.*

A situation very similar to that present here arose in the landmark case of *In re Richardson*, 247 N.Y. 401, 160 N.E. 655 (1928), where Chief Judge Cardozo struck down a New York statute under which the removal of the President of Queens Borough was to be reviewed by the New York Supreme Court. Pursuant to the statute, a citizen filed with the Governor of New York charges against the borough president and sought the president's removal. The Governor then directed a Justice of

the New York Supreme Court to hear the charges and make a report thereon to the Governor. When the Justice attempted to move forward to a hearing, the borough president sought a writ of prohibition to stop the proceeding.

Judge Cardozo held that the proceeding violated the New York Constitution because it placed nonjudicial responsibilities on a judicial officer and violated the specific prohibition on placing other public office or trust on a judge. Although the Cardozo opinion is lengthy and develops the similarities of the role of the judge to that of a prosecutor, it is particularly instructive for its examination of both the philosophical and practical reasons why placing the hearing responsibility in the judge offends the basic structure of a government with independent branches.

Judge Cardozo reasoned that the proceeding offended the separation of powers because it made the Justice "the delegate of the Governor in aid of an executive act" and went on to reason that:

> His findings when made will have none of the authority of a judgment. To borrow Bacon's phrase, they will not "give the rule or sentence." They will not be preliminary or ancillary to any rule or sentence to be pronounced by the judiciary in any of its branches. They will be mere advice to the Governor, who may adopt them, or modify them, or reject them altogether. From the beginnings of our history, the principle has been enforced that there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfillment of judicial duties . . . . The exigencies of government have made it necessary to relax a merely doctrinaire adherence to a principle so flexible and practical, so largely a matter of sensible approximation, as that of the separation of powers. Elasticity has not meant that what is of the essence of the judicial function may be destroyed by turning the power to decide into a pallid opportunity to consult and recommend . . . .

247 N.Y. at 410, 160 N.E. at 657 (citations omitted). To the philosophical principle, Judge Cardozo added a more practical objection that "[t]he policy is to conserve the time of the judges

for the performance of their work as judges, and to save them from the entanglements, at times the partisan suspicions, so often the result of other and conflicting duties." *Id.* at 420, 160 N.E. at 661. He noted that the Supreme Court Justice in *Richardson* had already spent two months away from his official duties while engaging in the factfinding as directed by the Governor. *Id.*

A similar case arose in Michigan with respect to the removal of a county officer. Under the Michigan scheme, a hearing was held by a probate judge at the direction of the Governor. The hearing was, however, similar to an inquest to allow the Attorney General or a prosecuting witness to examine the witness under oath. The judge made no findings, but did make evidentiary and procedural rulings.

The Michigan Supreme Court struck down the statute as imposing functions of the executive branch on the judicial branch. *Buback v. Romney*, 380 Mich. 209, 156 N.W.2d 549 (1968). The court reasoned that when the constitution assigned the power to remove a county officer to the executive branch, "that power must be exercised within that branch if the doctrine of separation of powers is to be meaningful." *Id.* at 227, 156 N.W.2d at 558. It went on to hold that the statute

> imposes on a probate judge a function in the removal process which is a partial exercise of executive power because the legislature by statute placed the obligation and responsibility for removal of county officers in the Governor. The function of hearing witnesses . . . can be performed by the Governor. If a probate judge is appointed by the Governor to undertake that function, the judge becomes the Governor's substitute.

*Id.*

Other courts facing conceptually similar situations have followed the rationale of *In re Richardson.* See, e.g., *Brach v. Chief Justice of District Ct. Dep't*, 386 Mass. 528, 437 N.E.2d 164 (1982) (district court acting as agent of the Registrar of Motor Vehicles in accepting motor vehicle license on conviction of a crime violates the separation of powers provision of the Massachusetts Constitution); *In re Opinion of the Justices*, 300

Mass. 596, 14 N.E.2d 465 (1938) (removal of mayor of city or chief of police by Justices of the Supreme Judicial Court when "the public good so requires," vests executive power in the judiciary); *In re Nelson*, 83 S.D. 611, 163 N.W.2d 533 (1968) (statute making a circuit judge chair of mediation panel to determine which of competing suppliers will provide electrical service in a specific area violated the separation of powers provision of the South Dakota Constitution); *Timpanogos Planning v. Central Utah Water*, 690 P.2d 562 (Utah 1984) (appointing nonjudicial officers).

The statute involved in this case has the same defects as that in *Richardson*. The action of the district court is merely advisory, and the legislative body of the municipality may choose to take no action even if the court has found misconduct. As in *Richardson*, the findings of the district court have none of the authority of a judgment. They are "certified" to the municipality as an advanced ruling on what may or may not become a personnel dispute between the police officer and the legislative body of the municipality. The district court must, on short notice, drop what it is doing and turn to the charges made concerning the police officer.

The Vermont district court, which was first created in 1968 to take some of the workload from the superior court, now receives sixty thousand new cases per year. Although we have added judges and staff over the years, manpower and resources have not kept pace with the caseload growth, and each year we demand higher levels of productivity from the court. As the cases appealed to this Court demonstrate, the caseload growth has meant that the district court cannot meet statutory time limits for the adjudication of juvenile cases where the critical interests of children and families are at stake, see, e.g., *In re M.C.P.*, 153 Vt. 275, 303, 571 A.2d 627, 642 (1989), and further that they cannot always meet the time guidelines for adjudication of criminal cases. See, e.g., *State v. French*, 152 Vt. 72, 75–79, 564 A.2d 1058, 1060–62 (1989).

Under these circumstances, a legislative command to drop everything and adjudicate a personnel dispute within ten days of the request can have serious adverse consequences for the

many other litigants in the court, as well as to important public interests. Where that command crosses the line that marks the limit of judicial power and responsibility to make the district court an agent of a municipality which may or may not accept its findings, we must clearly and firmly decline the responsibilities the Legislature seeks to impose on us.

The district court had no jurisdiction to hear this proceeding. Accordingly, we will dismiss it here.

*Dismissed.*